George T. ADAMS, Plaintiff,

v.

Richard EGLEY, dba Egley's Recovery Service, et al., Defendants.

Pedro POSADAS, Plaintiff,

v.

STAR AND CRESCENT FEDERAL CREDIT UNION et al., Defendants.

Civ. Nos. 70–345–N, 70–359–N.

United States District Court, S. D. California.

Feb. 11, 1972.

Michael Weisz, Legal Aid Society of San Diego, Inc., San Diego, Cal., for plaintiffs George T. Adams and Pedro Posadas.

James A. Malkus, San Diego, Cal., for plaintiff George T. Adams.

DeAnne D. Fisher, San Diego, Cal., for plaintiff Pedro Posadas.

Jeffrey Isaacs, Procopio, Cory, Hargreaves & Savitch, San Diego, Cal., for defendant Southern California First Nat. Bank.

David R. Thompson, San Diego, Cal., for defendant Star and Crescent Federal Credit Union.

David R. Pitkin, Pitkin & Burley, San Diego, Cal., for defendant Richard Egley, dba Egley's Recovery Service.

Edward J. Leavitt, San Diego, Cal., for defendant Douglas B. Tipton, dba The C.I.D. Bureau.

## MEMORANDUM DECISION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

NIELSEN, District Judge.

The two cases presently before this court on plaintiffs' motion for partial summary judgment involve the constitutionality of California Commercial Code Sections 9503 and 9504, which provide for the repossession and disposition of collateral by a secured party after de-

fault by the debtor.[1] These lawsuits, consolidated for consideration on the basis of their similarity, represent the latest development in the continuing attack on statutory prejudgment remedies which began with the 1969 Supreme Court decision in Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349. In that case a Wisconsin wage-garnishment procedure was held to constitute a taking of property without prior notice and hearing, and thus to violate procedural due process as guaranteed by the Fourteenth Amendment. The California provisions here at issue, authorizing repossession and sale without judicial process, are challenged on a like basis.

The facts of the instant cases are as follows:

### 1. Adams v. Egley et al.; 70–345–N

On June 17, 1968, plaintiff Adams borrowed one thousand dollars from the Bank of La Jolla, executing a promissory note and a security agreement in favor of the bank. The terms of the security agreement provided that should the debtor fail to make payment of any part of the principal or interest as provided in the promissory note:

". . . the Secured Party shall also have all of the rights and remedies of a Secured Party under the California Uniform Commercial Code, or other applicable law, and all rights and remedies shall, to the extent permitted by law, be cumulative. Without limiting the generality of the foregoing, upon the occurrence of any such event of default the Secured Party is entitled to take possession of the vehicle and to take such other measures as Secured Party may deem necessary for the protection of the vehicle." (Security Agreement, page 2.)

At a time after execution of the note defendant Southern California First National Bank became the successor in interest to the Bank of La Jolla.

Plaintiff fell behind on his payments and defendant Egley, acting for the bank, took possession of two of the three vehicles which served as security under the agreement. They were then sold by the bank at private sale.

### 2. Posadas v. Star and Crescent Federal Credit Union et al.; 70–359–N

On June 29, 1967, plaintiff Posadas borrowed approximately $1,300.00 from defendant Star and Crescent Federal Credit Union to buy a truck, executing a promissory note and security agreement in favor of that defendant, pledging the truck as security.

In February, 1968, plaintiff borrowed an additional $3,339.00 from the credit union to buy an automobile, executing a separate note and security agreement, pledging the automobile as security. Both security agreements contained provisions that "in the event of default of any term or condition of this security agreement, or the promissory note aforesaid, Secured Party shall be entitled to immediate possession of said . . . property according to law . . .."

In June, 1970, plaintiff Posadas fell behind on his payment schedules for both loans. On September 25, 1970, defendant Tipton, acting for defendant credit union, repossessed the plaintiff's truck. On December 18, 1970, plaintiff surrendered his 1968 automobile to the creditor in exchange for the return of the truck.

 Before considering the constitutional aspects of the present controversy this court must direct its attention to the question of its jurisdiction to decide the matter. Plaintiffs have asserted two bases for the founding of jurisdiction in this court: first, federal question jurisdiction under 28 U.S.C. § 1331; and second, jurisdiction under the Civil Rights Act, 28 U.S.C. § 1343 and 42 U.S.C. § 1983. The request for a statutory three-judge court pursuant to 28 U.S.C. § 2281 et seq. is inapposite in this case, since no action of either a state or local officer is sought to be restrained, and thus the specific requirements of

---

1. The text of these provisions are set forth as an Appendix to this Memorandum.

that statute are not met. *See* Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970).

■ The federal question purportedly raised here is whether the summary repossession of plaintiffs' property constitutes a taking without due process of law. The constitutional provision under which this action is alleged to arise and with which this court concerns itself is the due process clause of the Fourteenth Amendment, which provides that no state shall take any action which shall deprive the individual of property without due process of law. The Civil Rights sections also asserted by plaintiffs provide for a judicial remedy where one is deprived of any constitutional or statutory right by any person acting "under color of state law." It is fundamental, therefore, that for jurisdiction to lie on either ground, some significant state involvement in the alleged wrongful acts must be shown; the conduct of private individuals, however wrongful or discriminatory, does not come within the purview of those sections if the state has in no way authorized, sanctioned, or encouraged it.[2]

Southern California First National Bank, defendant in the *Adams* case, No. 71–345–N, has challenged this court's jurisdiction on the basis that under the facts of these cases no state action or action under color of state law can be shown. What is involved here, they state, are private contracts whose terms are self-executing. Unlike cases involving garnishment, replevin, claim and delivery, attachment, or distraint procedures, we deal here with repossession, which is a self-help remedy: the creditor, either by himself or by means of a private collection agency, may enter the premises of a debtor, remove the designated collateral, and dispose of it, all without the aid of any state official. Nor are these acts of repossession solely dependent on statutory authorization as, for example, liens under Innkeeper's

Lien laws. Rather, repossession is specifically provided for in a signed security agreement between the parties. Thus, argue the defendants, the taking is pursuant to private agreement with no state involvement on which to found jurisdiction.

This court cannot agree, and finds the situation governed by the reasoning of the Supreme Court in Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). That case affirmed the constitutional infirmity of a clause in the California Constitution which prohibited restrictions on an individual's right to sell property to whomever he chooses. The Supreme Court found that this provision, enacted as a repealer of California's various anti-discriminatory housing legislation, actually served as state encouragement of private discriminations. Hence, despite the fact that all parties to the controversy in *Reitman* were private individuals not connected with the state and that no state personnel were concerned, the Court found in the mere enactment of the statute state involvement sufficient to bring the alleged discriminatory acts within the purview of the Fourteenth Amendment.

■ The cases here under consideration present an analogous situation. The repossessions complained of as violations of due process were ostensibly private acts pursuant to a contract. However, it cannot be seriously questioned that the presence of Sections 9503 and 9504 had a significant impact on the contents of that contract's provisions. The specific reference to the Uniform Commercial Code in the Adams contract and to "immediate possession . . . according to law" in the Posadas contract are ample indication that in drawing up the agreements defendant creditors were "persuaded or induced to include" repossession by the fact that such repossession was permitted by statute. *Cf.*

---

2. There has been substantial discussion on the differences in scope between state action necessary under § 1331 and the action under color of state law proscribed by § 1983 (see detailed discussion in Klim v. Jones, *supra*). However, that distinction need not concern us in this case.

Evans v. Abney, 396 U.S. 435, 445, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970). These Commercial Code sections set forth a state policy, and the security agreements upon which the instant actions rest, whose terms are authorized by the statute and which incorporate its provisions, are merely an embodiment of that policy. It is therefore apparent that the acts of repossession were made "under color of state law" as required by the Civil Rights statutes, and that the passage of Sections 9503 and 9504, which authorize such acts are sufficient state action to raise a federal question.

This precise issue was raised in the recent case of Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970). There, in its consideration of the constitutionality of distraint procedures under the Pennsylvania Landlord and Tenant Act, a three-judge court found that a written lease provision permitting levies and sales did not create an independent right in the landlord to distrain. Rather, the court said:

> ". . . the tenant agrees only that the landlord has the right to act pursuant to 68 Pa.Stat.Ann. § 250.301 et seq. If this provision means anything, it means only that the tenant agrees that, in cases wherein he has defaulted, he will not object on legal grounds to the use of the statutory distress procedure." 319 F.Supp. 284, 294.

While such an approach might also be applied to the instant situation, it does not appear necessary to go this far. Even if an independent right to repossess is created by the signed security agreement, that right is created under authority of state law, and consequently does not defeat the jurisdiction of this court.

Having settled the question of jurisdiction, I now turn to the major question presented by these cases. The issue is a simple one: whether the repossessions which occurred in the situations presently under consideration represent takings without due process of law, thus denying plaintiffs their constitutional rights. This court feels compelled to decide that they do. Sections 9503 and 9504 of the California Commercial Code, which provide for such takings, are therefore constitutionally defective and void.

The departure point for such a conclusion is, of course, the *Sniadach* opinion, and the resolution of the issues posed depends in the first instance on the scope it is to be given. Some courts have interpreted the decision narrowly, and have confined it to its own facts. *See* Brunswick Corporation v. J & P, Inc., 424 F.2d 100 (10th Cir. 1970); Termplan, Inc. v. Superior Court, 105 Ariz. 270, 463 P.2d 68 (1969); Michael's Jewelers v. Handy, 6 Conn.Cir. 103, 266 A.2d 904 (1970); Mills v. Bartlett, 265 A.2d 39 (Del.Super.1970).

However, the great weight of authority, both state and federal, has taken a broader approach, seeing in *Sniadach* not a special constitutional rule for wages, but a return of "the entire domain of prejudgment remedies to the long-standing procedural due process principle which dictates that except in extraordinary circumstances, an individual may not be deprived of his life, liberty, or property without notice and hearing." Randone v. Appellate Dept., 5 Cal.3d 536, 547, 96 Cal.Rptr. 709, 715, 488 P.2d 13, 19 (1971). *See also* Blair v. Pitchess, 5 Cal.3d 258, 96 Cal.Rptr. 42, 486 P.2d 1242 (1971); Larson v. Fetherston, 44 Wis.2d 712, 172 N.W.2d 20 (1969); Jones Press, Inc. v. Motor Travel Services, Inc., 286 Minn. 205, 176 N.W.2d 87 (1970); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970); Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970), prob. juris. noted, 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529 (1971); Laprease v. Raymours Furniture Co., 315 F.Supp. 716 (N.D.N.Y.1970); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970). Indeed the Supreme Court itself has used *Sniadach* as a cornerstone for the general proposition that absent some compelling state interest an individual must be accorded a reasonable opportunity to be heard before he can be deprived of some

significant interest by operation of law. *See* Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); California Department of Human Resources Development v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The varied nature of the cases to which the principle has been applied appears to this court a strong indication of the Supreme Court's notion of that decision's scope.

Yet the call of *Sniadach* and its progeny is not absolute. The Supreme Court in rendering its decision was careful to point out that summary procedures may well meet the requirements of due process in extraordinary situations, 395 U.S. 337, 339, 89 S.Ct. 1820, 23 L.Ed.2d 349, and it indicated that were a statute drawn narrowly enough to meet such unusual conditions, it might pass constitutional muster. It has been suggested that since Sections 9503 and 9504 of the California Commercial Code involve only secured transactions between contracting parties, they represent a situation in which the prejudgment seizure of goods without a prior hearing is valid, even under *Sniadach.*

This appears to have been the reasoning of the Tenth Circuit in Brunswick Corporation v. J & P, Inc., 424 F.2d 100 (1970), in which the court rejected the debtor's due process argument. Commenting on *Sniadach* the court stated:

> "Sniadach expressly was a unique case involving, 'a specialized type of property presenting distinct problems in our economic system.' That case involved wage garnishment without notice or hearing prior to judgment on a promissory note. It is not in the least comparable to the case here on appeal involving enforcement of a security interest. Appellants have contractually agreed that upon default, their creditor Brunswick '. . . may take immediate possession of said property [collateral] and for this purpose the Seller may enter the premises where said property may be and remove the same without notice or demand, and with or without legal process; thereupon all the rights and interests of the Buyer to and in said property shall terminate.' Appellants admit they were in default on the conditional sale, so they cannot now be heard to object to the default procedures they agreed to simply because Brunswick did utilize the legal process of replevin under bond." 424 F.2d 100, 105.

The contracting parties in the *Brunswick* case were both commercial enterprises, and the property subject to repossession consisted of bowling equipment. This was determined to be of no significance by the Southern District of Florida in Fuentes v. Faircloth, 317 F.Supp. 954 (1970), jur. noted, 401 U.S. 906, 91 S.Ct. 893, 27 L.Ed.2d 804 (1971), a decision which followed closely the reasoning in *Brunswick,* and which is presently being considered by the Supreme Court. In *Fuentes,* the fact that the contract was between a commercial party and an individual, as opposed to the *Brunswick* situation in which two commercial parties had contracted, was held to be "a distinction without a difference as far as Due Process is concerned." 317 F.Supp. 954, 957. The *Fuentes* court affirmed its belief that prejudgment seizure is justified in certain situations, and that "replevin pursuant to a contract which authorizes a conditional seller to repossess in order to protect his security interest in the goods which are the subject of the contract is one of those situations." 317 F.Supp. 954, 958.

This court takes issue with the reasoning of both these cases on several grounds. First, *Brunswick* was decided prior to Goldberg v. Kelly, *supra,* or any of the other decisions which, as discussed above, serve to clarify the scope of *Sniadach.* The *Brunswick* court, therefore, chose to confine *Sniadach* to its facts, and found it inapplicable to a situation involving a secured transaction in which both parties presumably assented to the terms contained in the agreement. This

court, having decided that *Sniadach* is of broader dimensions, does not feel that a statute providing for repossession without notice or hearing is exempt from constitutional scrutiny merely because its operation is confined to situations involving the presence of a contract.

The implication of *Brunswick* is, of course, that the debtor, by entering into the agreement, was placed on notice of the consequences of failure to perform, and that the constitutional right to notice and hearing before the removal of the property was thereby waived. However, the presumption against the waiver of constitutional rights is well settled. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177 (1937); Ohio Bell Telephone Co. v. Public Utilities Commission, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937); Swarb v. Lennox, 314 F.Supp. 1091 (E.D.Pa.1970), prob. jur. noted, 401 U.S. 991, 91 S.Ct. 1220, 28 L.Ed.2d 529 (1971). While a signed contract may represent an effective waiver where the contracting parties are of equal bargaining power, it is clearly not so in all cases, particularly those involving so-called "adhesion contracts," in which the terms are specified by the seller or lender. As noted by the Supreme Court of California in Blair v. Pitchess, *supra:*

"'The weaker party, in need of goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses. His contractual intention is but a subjection more or less voluntarily to terms dictated by the stronger party; terms whose consequences are often understood only in a vague way, if at all.' (Kessler, Contracts of Adhesion— Some Thoughts About Freedom of Contract (1943) 43 Colum.L.Rev. 629, 632.)" 5 Cal.3d 258, 275–276, 96 Cal. Rptr. 42, 54, 486 P.2d 1242, 1254.

This court is not alone in failing to find an effective waiver of constitutional rights where standard-form contracts are involved. In Swarb v. Lennox, *supra,* the court held that confession of judgment clauses in signed consumer credit agreements and leases by those with incomes under ten thousand dollars did not constitute a waiver of the right to notice and hearing prior to execution on confessed judgments, since in most cases it could not be established that there was an intentional relinquishment or abandonment of a known right or privilege. In Laprease v. Raymours Furniture Co., *supra,* the court in considering a replevin action based on a security agreement stated by way of dictum that, "We question that the fine print in the usual consumers conditional sales contract gives rise to a competent and intelligent waiver of a constitutional right." 315 F.Supp. 716, 724.

In Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970), the court found that written provisions in signed leases permitting a landlord to distrain for rent did not amount to a waiver by the tenant of his right to object on constitutional grounds to the statutory distress procedure. Stated the court:

"We take judicial notice of the fact that form leases are put before tenants on an 'accept this or get nothing' basis, . . . and that tenants— who need housing—are compelled to sign. There is no freedom of contract —there is merely a freedom to adhere to the terms of the contract written by the landlord." 319 F.Supp. 284, 294.

And finally, in Blair v. Pitchess, *supra,* the California Supreme Court invalidated that state's prejudgment claim and delivery procedures despite the presence of retained title sales agreements and collateral security agreements normally involved in claim and delivery cases. It held "that the mere fact that such clauses are exacted in many cases cannot render constitutional the claim and delivery law, which deprives alleged debt-

ors of their right to due process whether or not such a purported waiver has been signed." 5 Cal.3d 258, 281, 96 Cal.Rptr. 42, 59, 486 P.2d 1242, 1259.

While none of these cases is binding on this court, I find their reasoning persuasive. If the policy underlying the decision in *Sniadach* is to provide some extra modicum of legal protection to those who live on the lower *economic margins* of our society, it would be illogical for the courts to be dissuaded from applying that policy by the presence of standard-form contracts which often operate most harshly on the poor. *See* Williams v. Walker-Thomas Furniture Co., 121 U.S. App.D.C. 315, 350 F.2d 445 (1965). If the provisions of a contract can legitimize summary repossession, wage garnishment might then be valid on the same theory, as long as a private agreement could be shown. This would fly in the face of the reasoning in *Sniadach*, and is rejected by this court.

One further point which might be raised in this regard is that repossession without judicial process often results in the taking of property not specified as collateral in the security agreement. This is particularly true where the subjects of the seizure are vehicles which may have other items stored inside, as was the case in both situations presently before this court. Assuming *arguendo* that the security agreement did work a valid waiver of the constitutional right to pre-seizure notice and hearing with regard to the named collateral, no such assumption could be made as to the extraneous items, and as to these, the denial of due process is self-evident.

■ A second area of disagreement with the *Brunswick* and *Fuentes* decisions is the idea that the identity of the parties to the contract is of no significance. The above discussion is predicated on the existence of a standard-form contract between a corporate creditor and an individual. Where, as in *Brunswick*, the parties are both commercial entities, the bargaining power is to some degree equalized, and the purported

waiver of the constitutional right to prior notice and hearing may indeed be effective. However, the California repossession statute presently under consideration is not limited to secured transactions between parties of equal bargaining power. Thus, like the wage-garnishment statute invalidated in *Sniadach*, it is not "narrowly drawn to meet any such unusual condition," 395 U.S. 337, 339, 89 S.Ct. 1820, 1821, and cannot achieve validity on this basis.

■ Likewise, the fact that *Brunswick* involved the repossession of bowling equipment is a significant factor not noted in *Fuentes*, and one which further distinguishes the present situation. In *Sniadach*, the property involved was wages, which the Supreme Court acknowledged was a "specialized type of property presenting distinct problems in our economic system." 395 U.S. 337, 340, 89 S.Ct. 1820, 1822. Other courts have interpreted "specialized type of property" as referring to those goods which, in some vaguely defined way, are essential to the maintenance of day-to-day existence. *See* Santiago v. McElroy, *supra*; Laprease v. Raymours Furniture Co., *supra*; Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970). It is obvious that the bowling equipment involved in the *Brunswick* case was not the kind of property which the Supreme Court had in mind when it decided *Sniadach*. However, the security interests covered by California Commercial Code Sections 9503 and 9504 are not confined to items of such a nonessential nature. The subjects of secured transactions are commonly household appliances, furniture, and automobiles, all of which may be considered necessaries for ordinary day-to-day living. Consequently, for this reason also, the statutes in issue fail to meet the test of narrowness established by *Sniadach*.

■ Thus, even though there may be situations in which Sections 9503 and 9504 would effect no violation of due process, to hold it valid on this basis would constitute extensive re-drafting by this court, and such is not the function

of the judiciary. In light of *Sniadach*, then, the statutes providing for summary repossession and sale must be held unconstitutional.

Although such a conclusion appears incumbent on this court given its view of the applicable law, it is reached with no small measure of reluctance. While I applaud any effort to secure for the poor and helpless the enjoyment of their constitutional rights, it is not clear that the present trend of judicial thinking will ultimately have this effect. For those who make an earnest effort to maintain their payment schedules and default due to circumstances beyond their control, creditors have traditionally exercised considerable flexibility and have exhausted every reasonable alternative before resorting to the drastic and expensive remedy of repossession. These persons, the ostensible beneficiaries of *Sniadach* and its progeny, stand to suffer substantially in the long run, if sellers and creditors raise their prices and interest rates commensurate with the cost of the judicial process which these decisions make necessary. Further, this court cannot help but note the increasing segment of our population which has deliberately chosen to live on the lower rungs of the economic ladder, whether out of revulsion against the materialism of society or out of a lack of ambition and commitment. For these persons, whether repossession is summary in nature or the result of judicial process will, in most instances, have little significance. Whether or not the benefits of the present decision will prove sufficient to outweigh the possible costs remains to be seen.

Having decided as a matter of law that the prejudgment repossessions herein complained of were executed under color of state law, this court finds no triable issue of fact remaining in these cases. Since defendants acted pursuant to Sections 9503 and 9504 of the California Commercial Code, which have been shown to violate the due process clause of the Fourteenth Amendment, the repossessions must be held illegal.

Plaintiffs are entitled to partial summary judgment on this question, and the instant motion is hereby granted.

It is so ordered.

## APPENDIX

§ 9503. *Secured Party's Right to Take Possession After Default.* Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action. If the security agreement so provides the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under Section 9504. (Stats.1963, c. 819, § 9503.)

§ 9504. *Secured Party's Right to Dispose of Collateral After Default; Effect of Disposition.* (1) A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to the division on sales (Division 2). The proceeds of disposition shall be applied in the order following to

(a) The reasonable expenses of retaking, holding, preparing for sale, selling and the like and, to the extent provided for in the agreement and not prohibited by law, the reasonable attorneys' fees and legal expenses incurred by the secured party;

(b) The satisfaction of indebtedness secured by the security interest under which the disposition is made;

(c) The satisfaction of indebtedness secured by any subordinate security interest in the collateral if written notification of demand therefor is received before distribution of the proceeds is completed. If requested by the secured

party, the holder of a subordinate security interest must reasonably furnish reasonable proof of his interest, and unless he does so, the secured party need not comply with his demand.

(2) If the security interest secures an indebtedness, the secured party must account to the debtor for any surplus, and, unless otherwise agreed, the debtor is liable for any deficiency. But if the underlying transaction was a sale of accounts, contract rights, or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides.

(3) A sale or lease of collateral may be as a unit or in parcels, at wholesale or retail and at any time and place and on any terms, provided the secured party acts in good faith and in a commercially reasonable manner. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, the secured party must give to the debtor, and to any other person who has a security interest in the collateral and who has filed with the secured party a written request for notice giving his address, a notice in writing of the time and place of any public sale or of the time on or after which any private sale or other intended disposition is to be made. Such notice must be delivered personally or be deposited in the United States mail postage prepaid addressed to the debtor at his address as set forth in the financing statement or as set forth in the security agreement or at such other address as may have been furnished to the secured party in writing for this purpose, or, if no address has been so set forth or furnished, at his last known address, and to any other secured party at the address set forth in his request for notice, at least five days before the date fixed for any public sale or before the day on or after which any private sale or other disposition is to be made. Notice of the time and place of a public sale shall also be given at least five days before the date of sale by publication once in a newspaper of general circulation published in the county in which the sale is to be held. Any public sale shall be held in the county or place specified in the security agreement, or if no county or place is specified in the security agreement, in the county in which the collateral or any part thereof is located or in the county in which the debtor has his residence or chief place of business, or in the county in which the secured party has his residence or a place of business if the debtor does not have a residence or chief place of business within this State. If the collateral is located outside of this State or has been removed from this State, a public sale may be held in the locality in which the collateral is located. Any public sale may be postponed from time to time by public announcement at the time and place last scheduled for the sale. The secured party may buy at any public sale and if the collateral is customarily sold in a recognized market or is the subject of widely or regularly distributed standard price quotations he may buy at private sale. Any sale of which notice is delivered or mailed and published as herein provided and which is held as herein provided is a public sale.

(4) When collateral is disposed of by a secured party after default, the disposition transfers to a purchaser for value all of the debtor's rights therein, discharges the security interest under which it is made and any security interest or lien subordinate thereto. The purchaser takes free of all such rights and interest even though the secured party fails to comply with the requirements of this chapter or of any judicial proceedings

(a) In the case of a public sale, if the purchaser has no knowledge of any defects in the sale and if he does not buy in collusion with the secured party, other bidders or the person conducting the sale; or

(b) In any other case, if the purchaser acts in good faith.

(5) A person who is liable to a secured party under a guaranty, indorsement, repurchase agreement or the like and who

**624**

receives a transfer of collateral from the secured party or is subrogated to his rights has thereafter the rights and duties of the secured party. Such a transfer of collateral is not a sale or disposition of the collateral under this division. (Stats.1963, c. 819, § 9504.)