**Leroy J. MAYHUGH, Plaintiff,**

v.

**BILL ALLEN CHEVROLET and General
Motors Acceptance Corporation,
Defendants.**

Civ. A. No. 20131-3.

United States District Court,
W. D. Missouri, W. D.

June 22, 1973.

**2**

Charles C. Shafer, Kansas City, Mo., for plaintiff.

James W. Benjamin, Kansas City, Mo., for defendants.

## FINAL JUDGMENT AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

WILLIAM H. BECKER, Chief Judge.

This is a civil rights complaint for damages brought by plaintiff under Section 1983, Title 42, United States Code, and Section 1343(3), Title 28, United States Code, wherein plaintiff claims that defendants have deprived him of his property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. The defendants have moved to dismiss the complaint for lack of jurisdiction of the subject matter.

On October 31, 1970, the plaintiff purchased a 1970 Chevrolet truck from defendant Bill Allen Chevrolet Company. The total time price of the truck was $20,968.55 including the cost of casualty and credit life insurance. The plaintiff was allowed $3,814.95 for his 1969 Plymouth automobile and paid $500.00 in cash leaving a remaining balance to be paid of $16,653.60. The remaining balance was secured by a purchase money security agreement entitled "Retail Installment Contract (Chattel Mortgage)," which required the plaintiff to pay the balance of $16,653.60 in thirty-six monthly installments of $462.00 each. The first installment under the contract was payable on December 12, 1970, and the remaining installments were payable on the 12th day of each month thereafter. The installment contract was signed by the plaintiff as mortgagor, and by Bill Allen Chevrolet, Inc., as mortgagee on October 31, 1970. Thereafter, the defendant company assigned the "Retail Installment Contract (Chattel Mortgage)" to defendant GMAC which, until plaintiff's alleged default on the installment payments, received the monthly installment payments paid by the plaintiff pursuant to the written agreement.

On December 14, 1971, without instituting a judicial proceeding and without assistance of any state officer, defendant GMAC repossessed plaintiff's truck from the defendant under the terms of the "Retail Installment Contract (Chattel Mortgage)." [1]

1. Which specifically provides that:
"In the event mortgagor defaults in any payment due hereunder, or fails to comply with any of the terms or conditions hereof, or a proceeding in bankruptcy, receivership or insolvency be instituted by or against the mortgagor or his property, or the mortgagee has reasonable cause to believe that the property is in danger of misuse or confiscation, or in the event either that the mortgagor fails for any reason to comply with paragraph 3(a) above or that said required physical damage insurance (whether procured by the mortgagee or by the mortgagor) is cancelled by the insurer prior to expiration thereof,

At the time of repossession of the truck it was in the actual possession of Bill Allen Chevrolet Company to whom it had been delivered by the plaintiff because of a defective frame. Bill Allen Chevrolet Company offered to repair the defective frame at its expense, but plaintiff refused to accept redelivery of the truck with a repaired frame. Plaintiff, on the contrary, demanded the replacement or return of the purchase price by Bill Allen Chevrolet Company. Plaintiff gave Bill Allen Chevrolet Company until December 6, 1971, to comply with one of his demands stating a suit would be filed thereafter if Bill Allen Chevrolet Company failed to do so.

This action of plaintiff was in legal effect an election to reject the truck and to claim full replacement or damages for breach of the sales agreement. See § 400.2–602 RSMo, V.A.M.S., of the Uniform Commercial Code of Missouri. By such action the plaintiff elected to abandon his ownership and possessory interest in the truck in preparation for seeking damages, including return of the purchase price or substitution of a new truck. Paragraph (2)(a) of § 400.2–602 RSMo.

Under the terms of Section 1983, *supra*, the two elements necessary for a recovery by plaintiff herein are first, that defendants have deprived plaintiff of a right secured by the "Constitution and laws" of the United States;[2] and second, that defendants deprived him of this right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142; Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492. Therefore, for jurisdiction to exist in this Court, some significant state involvement in the alleged deprivation of a federally protected right must be shown.

It is plaintiff's contention in support of this Court's jurisdiction that defendants' repossession under Sections 400.9–503 and 400.9–504 of the Missouri Commercial Code constitutes action under the color of State law and that such action deprives him of his constitutionally protected right to be heard prior to the taking of his property. In particular, plaintiff contends that the mere enactment of the Uniform Commercial Code provides sufficient involvement of the

the mortgagee shall have the right, at his or its election to declare the unpaid balance, together with any other amount for which the mortgagor shall have become obligated hereunder, to be immediately due and payable. Further in any such event, mortgagee or any sheriff or other officer of the law may take immediate possession of said property without demand, including any equipment or accessories thereto; and for this purpose mortgagee may enter upon the premises where said property may be and remove same. Mortgagee may take possession of any other property in the hereinbefore-described motor vehicle at time of repossession, wherever such other property may be therein, and hold same for mortgagor at mortgagor's risk without liability on the part of mortgagee, mortgagor to be liable for any charges for storing such property incurred by mortgagee. Such repossession shall not affect mortgagee's right, hereby confirmed, to retain all payments made prior thereto by the mortgagor hereunder.

"In the event of repossession of said property the mortgagee shall have the rights and remedies provided and permitted by law, including the right to apply the proceeds of disposition to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, reasonable attorneys' fees as provided in Provision 4, above, legal expenses incurred and satisfaction of indebtedness. Any surplus shall be paid to the mortgagor or as otherwise required by law. The mortgagor shall be liable for any deficiency.

"The requirement of reasonable notification of the time and place of any public or private sale or other intended disposition shall be met if notice thereof is mailed, postage prepaid, to the mortgagor and any other person entitled thereto ten (10) days prior to such sale or other disposition of the property."

2. This first requirement is alleged despite the fact that plaintiff alleges the unlawful deprivation of a property right. The distinction between personal liberties and property rights for jurisdictional purposes under 28 U.S.C. § 1343, was recently rejected by the Supreme Court of the United States in Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424.

state to constitute state action within the meaning of Section 1983.

Plaintiff relies particularly upon Adams v. Egley, (S.D.Cal.) 338 F.Supp. 614, appeal docketed, No. 72–1484, 9th Cir., Feb. 29, 1972, which decided the precise jurisdictional question presented here in favor of plaintiff. In finding state action, the Court in *Adams,* at page 617, citing Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830, stated:

"That case affirmed the constitutional infirmity of a clause in the California Constitution which prohibited restrictions on an individual's right to sell property to whomever he chooses. The Supreme Court found that this provision, enacted as a repealer of California's various antidiscriminatory housing legislation, actually served as state encouragement of private discriminations. Hence, despite the fact that all parties to the controversy in *Reitman* were private individuals not connected with the state and that no state personnel were concerned, the Court found in the mere enactment of the statute state involvement sufficient to bring the alleged discriminatory acts within the purview of the Fourteenth Amendment.

"The cases here under consideration present an analogous situation. The repossession complained of as violations of due process were ostensibly private acts pursuant to a contract. However, it cannot be seriously questioned that the presence of Sections 9503 and 9504 had a significant impact on the contents of that contract's provisions. The specific reference to the Uniform Commercial Code in the Adams contract and to 'immediate possession . . . according to law' in the Posadas contract are ample indication that in drawing up the agreements defendant creditors were 'persuaded or induced to include' repossession by the fact that such repossession was permitted by statute."

In Reitman v. Mulkey, *supra,* the Supreme Court of the United States agreed with the California Supreme Court that the state statute in question, which provided that every person had the right to rent or sell his property to whomever he chose, was enacted to overturn prior legislation prohibiting racial discrimination. The Supreme Court of the United States held that the private discriminations under the statute involved state action and were therefore unconstitutional.

Unlike the challenged statute in the case at bar, the state statute condemned in the *Reitman* case was found to encourage racial discrimination. The Missouri Commercial Code does not purport to authorize any distinction on racial grounds. Further, the statute under attack in *Reitman* authorized private racial discrimination in housing, action which theretofore had been prohibited by California state statutes. Thus, discrimination on the basis of race was sanctioned by the state in an area previously expressly prohibited. *Reitman* is not controlling in the case at bar.[3]

Plaintiff also cites Sniadach v. Family Finance Corporation, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, rehearing denied, 409 U.S. 902, 93 S.Ct. 177, 34 L.Ed.2d 165, in support of his contention that this Court has jurisdiction under the Civil Rights Act.

The *Fuentes* case is the most recent expression by the United States Supreme Court on the constitutional requirement of procedural due process in summary repossession or seizure of an individual's property. In *Fuentes,* and in the companion case, Parham v. Cortese, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, rehearing denied, 409 U.S. 902, 93 S.Ct. 180, 34 L.Ed.2d 165, the

---

3. In Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627, a much greater degree of involvement by the state was determined to be insufficient for the club's racial discrimination policies to constitute action under color of state law.

Supreme Court held that the Florida and Pennsylvania replevin statutes violated the due process clause of the Fourteenth Amendment, and were therefore unconstitutional. Plaintiff contends that the *Fuentes* and *Parham* cases conclusively foreclose any argument on the question of jurisdiction in this case.

The primary question presented in the case at bar is whether the enactment by the State of Missouri of the Uniform Commercial Code Sections 400.9–503 and 400.9–504 RSMo has such an impact on the contracting parties in a security agreement that it constitutes state action. This question was not presented to or decided by the Court in the *Fuentes* case. Unlike Sections 400.9–503 and 400.9–504 of the Missouri Commercial Code, the replevin statutes under attack in *Fuentes* were not enforced through "self help" provisions but, instead, required some affirmative action on the part of state governmental officials for their enforcement. State action in that case was directly involved in the *Fuentes* case. So the court was not required in that case to decide the issue presented in this case. The Court in the *Fuentes* case, however, in discussing the change in the common law by state replevin statutes of Florida and Pennsylvania, did indicate an important factor to be considered in determining whether or not state action does in fact exist in the repossession statutes under attack in the case at bar. After a discussion of the history of common law replevin, the Court stated:

"Prejudgment replevin statutes like those of Florida and Pennsylvania are derived from this ancient possessory action in that they authorize the seizure of property before a final judgment. But the similarity ends there. As in the present case, such statutes are most commonly used by creditors to seize goods allegedly wrongfully detained—not wrongfully taken—by debtors. At common law, if a creditor wished to invoke *state power* to recover goods wrongfully detained, he had to proceed through the action of debt or detinue. These actions, however, did not provide for a return of property before final judgment. And, more importantly, on the occasions when the common law did allow prejudgment seizure by *state power*, it provided some kind of notice and opportunity to be heard to the party then in possession of the property, and a state official made at least a summary determination of the relative rights of the disputing parties before stepping into the dispute and taking goods from one of them." (Emphasis added.) 407 U.S. at 79, 92 S.Ct. at 1993.

And in footnote 12 of the Court's opinion in the *Fuentes* case, distinguishing repossession of property through the invocation of state power from repossession by self help, the Court stated:

"The creditor could, of course, proceed *without the use of state power*, through self-help, by 'distraining' the property before a judgment." (Emphasis added.)

Prior to the enactment of the Uniform Commercial Code in Missouri, there was no statutory authorization for repossession by a second creditor in Missouri. See Missouri Code Comment to § 400.9–503, V.A.M.S. (1965). The procedure adopted by Missouri in Section 400.9–503, however, gives the peaceably repossessing creditor no greater availability of remedies than those afforded by the common law. See Robinson v. Campbell, 1844, 8 Mo. 365; Bowens v. Benson, 1874, 57 Mo. 26; Holloway v. Arnold, 1877, 92 Mo. 293, 5 S.W. 277; Gill v. Mercantile Trust Company, St.L.Ct. App.1961, 347 S.W.2d 420.

The careful language of the Supreme Court in *Fuentes* distinguishing actual state involvement in repossession from repossession by self help, indicates that more than statutory ratification of a previously existing common law practice is necessary to provide the factor of "state action" required under Section 1983, at least when due process is involved in commercial repossessions.

**6**

Plaintiff also cites Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349, to support his claim that jurisdiction is present in this case. That case involved a prejudgment garnishment procedure whereby "the clerk of the court issues the summons at the request of the creditor's lawyer; and it is the latter who by serving the garnishee sets in motion the machinery whereby the wages are frozen." 395 U. S. at 338 and 339, 89 S.Ct. at 1821. While it required initiative on the part of the creditor to start the process in motion, the prejudgment garnishment statute held unconstitutional in *Sniadach* authorized a court summons to issue *ex parte* to cause the debtor's wages to be frozen. Under the procedure of the Uniform Commercial Code of Missouri, no active involvement on the part of the state is necessary for repossession of a chattel pledged as security.

In dealing with the question whether repossessions by private individuals authorized by statutes like those of Section 400.9-503 of the Missouri Commercial Code, constitute state action under Sections 1983 and 1343, most federal courts have held that there is no significant state involvement and have refused to exercise jurisdiction under Section 1983. Pease v. Havelock National Bank, (D. Neb.) 351 F.Supp. 118; Kirksey v. Theilig, (D.Colo.) 351 F.Supp. 727; Greene v. First National Exchange Bank of Virginia, (W.D.Va.) 348 F.Supp. 672; McCormick v. First National Bank of Miami, (S.D.Fla.) 322 F.Supp. 604 (a pre-*Fuentes* decision); Oller v. Bank of America, (N.D.Cal.) 342 F.Supp. 21; Colvin v. Avco Financial Services of Ogden, Inc., (D.Utah) (January 4, 1973, not yet reported); Shirley v. The State National Bank of Connecticut, (D.Conn.) (April 2, 1973, not yet reported).

In Pease v. Havelock National Bank, *supra*, at pages 120 and 121 of 351 F. Supp., Chief Judge Urbom, distinguishing *Fuentes*, stated:

"Nebraska's statute, § 9-503 of the Uniform Commercial Code, provides that the secured party may regain possession of secured goods upon default with or without process. In this case the defendants acted without process. Had they chosen to obtain judicial process, the procedures used in obtaining that process would have had to conform to due process in accordance with the principles of *Fuentes*. One armed with judicial process or a state officer or agent executing that process is cloaked with the authority of the state. That authority adds compulsion to the procedures used in recovering the goods named in the writ and allows a seizure of those goods in spite of any resistance the individual in possession of the goods may put forth. The individual defendants here were armed with no such state authority.

"It is the misuse of *state* authority against which the Fourteenth Amendment was designed to protect the individual. In the absence of that state authority no claim is presented." (Emphasis in original.)

█ There is no "significant state involvement" in the repossession of plaintiff's truck. Finding that the enactment of Sections 400.9-503 and 400.9-504 RSMo, codifying the pre-existing common law, does not constitute "state action" in the circumstances of this case, therefore this Court is without jurisdiction of this cause under Section 1983, Title 42, United States Code.

█ As a separate and independent ground for denying relief, it is concluded on the uncontroverted facts developed in pretrial that the repossession of the truck from Bill Allen Chevrolet Company did not deprive the plaintiff of any right of possession or ownership because plaintiff had voluntarily abandoned those rights by returning the truck and rejecting the truck for an alleged defect in preparation for a suit for damages for breach of the sale agreement, includ-

ing return of the purchase price. Section 400.2–602, RSMo.

It is therefore

Ordered and adjudged that plaintiff's complaint herein be, and it is hereby, dismissed for lack of jurisdiction.