Leo J. **BOLAND**

v.

**ESSEX COUNTY BANK AND TRUST COMPANY et al.**

Angelo C. **MARIANO**

v.

James F. **SHANNON** et al.

David A. **RUSSO**

v.

**ASSOCIATES FINANCIAL SERVICES COMPANY, INC.**

Esther **ENTRIALGO**

v.

**TWIN CITY DODGE, INC., et al.**

**Civ. A. Nos. 72–3299–G, 72–3513–G, 73–32–G and 73–784–G.**

United States District Court, D. Massachusetts.

Aug. 15, 1973.

---

Cambridge & Somerville Legal Serv-Steven D. Pepe, Cambridge, Mass., for David A. Russo.

Samuel E. Kaufman, Kafka, Kaufman, Kafka & Kafka, Boston, Mass., for Associates Financial Services Co., Inc.

Jeffrey M. Friedman, Lowell, Mass., Francis J. Conte, Fitchburg, Mass., for Esther Entrialgo.

John W. Connors, Worcester, Mass., for Worcester County Natl. Bank.

Edwin E. Kaarela, Fitchburg, Mass., for Twin City Dodge, Inc.

Patrick King, Boston, Mass., Jeffrey M. Friedman, Lowell, Mass., for Leo J. Boland.

Martin C. Goldman, Lynn, Mass., for Essex County Bank & Trust.

Elliott J. Mahler, Boston, Mass., for Automobile Recovery & Collection.

John J. Ford, Lynn, Mass., for Angelo C. Mariano.

John Paul Sullivan, John H. Henn, Foley, Hoag & Eliot, Boston, Mass., for GM Acceptance Corp.

Edward F. Myers, Boston, Mass., for Shannon & Lynnway Dodge.

Arnold Manthorne, Warner & Stackpole, Boston, Mass., for Chrysler Credit Corp.

## MEMORANDUM OF DECISION DENYING MOTIONS TO DISMISS

GARRITY, District Judge.

Plaintiffs in these cases bought automobiles from defendant car dealers pursuant to retail instalment sale contracts which were then assigned to defendant sales finance companies. Plaintiffs defaulted on the contracts and the finance companies repossessed the automobiles under § 9–503 of the Uniform Commercial Code without notice to plaintiffs and without judicial process. Plaintiffs have sued under 42 U.S.C. § 1983 for declaratory, injunctive and compensatory relief, claiming that self-help repossession under § 9–503 violates the due process guarantee of the Fourteenth Amendment as defined in Fuentes v. Shevin, 1972, 407 U.S. 67, 92 S.Ct. 2027, 32 L. Ed.2d 600. In three of the instant cases, defendants acted under § 9–503 as enacted by Massachusetts, Mass.G.L. c. 106, § 9–503; in the fourth (C.A. No. 73–32) under the U.C.C. as enacted by

Connecticut, C.G.S.A., § 42a–9–503. Defendants filed motions to dismiss for failure to state a claim on which relief can be granted [1] on the ground that the repossessions were not actions taken under color of state law. The court heard oral argument and received voluminous briefs.

The question presented by the motions, whether self-help repossession under § 9–503 is under color of state law, is one of the liveliest on the current judicial scene. At least ten federal district courts have written opinions and they are about evenly divided. The trail-blazing opinion answering the question in the affirmative was Adams v. Egley, S.D.Calif.1972, 338 F.Supp. 614. It was cited in the opinion in the Fuentes case, supra, n. 5, 407 U.S. at 72, 92 S.Ct. 2027, and has evoked scholarly comment, e. g., McDonnell, Sniadach, The Replevin Cases and Self-Help Repossession, 14 B.C.Ind. & Com.L.Rev. 437 (1973). Within two weeks after the decision in Adams v. Egley, a federal court sitting in another district of the same state reached the opposite conclusion, Oller v. Bank of America, N.D.Calif.1972, 342 F.Supp. 21. No purpose would be served by citing all the district court opinions. On the affirmative side of the question, a representative opinion is Gibbs v. Titelman, No. 72–2165 (E.D. Pa., Nov. 22, 1972); on the negative, Kirksey v. Theilig, D.Colo.1972, 351 F. Supp. 727. Courts of Appeals will doubtless address the issue in the near future. The Adams and Oller cases have been appealed to the Court of Appeals for the Ninth Circuit.

Granting that the issue is close, we believe that the defendant repossessors acted under color of state law. Preliminarily, "under color" of law is in our view the same as "state action" in the instant context. It is generally. United States v. Price, 1966, 383 U.S. 787, 794 n. 7, 86 S.Ct. 1152, 16 L.Ed.2d

267. The distinction made in Lavoie v. Bigwood, 1 Cir. 1972, 457 F.2d 7, 15, seems applicable. Plaintiffs in these proceedings do not seek to take the initiative, but to resist repossession of their automobiles. The Supreme Court in Adickes v. Kress & Co., 1970, 398 U. S. 144, 171, see also Brennan, J., dissenting at 210–212, 90 S.Ct. 1598, 1630, 26 L.Ed.2d 142, did not rule definitively on the point. None of the many district court opinions on the self-help repossession issue indicated that more than "state action" need be shown by plaintiffs. The voluminous briefs filed by the defendants in these proceedings did not so contend.

In our opinion, by enacting §§ 9–503 and 9–504 which provide for the repossession and disposition of collateral after default by the borrower, Massachusetts significantly encouraged self-help repossessions and became significantly involved in them within the meaning of Reitman v. Mulkey, 1967, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830. The statute changed the common law of Massachusetts in two significant respects. First, the statute permits repossession without judicial process if this can be done without breach of the peace, unless prohibited by the retail instalment contract; at common law, entry on premises without legal process was permitted only if provided by the contract. McLeod v. Jones, 1870, 105 Mass. 403. Second, the statute permits the creditor to both repossess and sue for the deficiency unless otherwise agreed; at common law, if a conditional vendor repossessed he disaffirmed the sale and was thereafter precluded from maintaining an action to recover the purchase price or any part of it remaining unpaid, absent a special provision in the contract. Russell v. Martin, 1919, 232 Mass. 379, 122 N.E. 447. The statute apparently effected similar changes in the law of Connecticut. There repossession was allowed when specifically contracted for, Sager

---

1. Some of the motions added lack of subject matter jurisdiction as an additional ground for dismissal. That aspect of the motions is not worth discussing. Bell v. Hood, 1946, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939.

v. Schmidt, 1923, 98 Conn. 736, 120 A. 504, but plaintiff's counsel in C.A. No. 73–32 represented that a diligent search of Connecticut cases failed to disclose a case recognizing or approving self-help repossession by one who has willingly parted with possession, except where granted by contract. The Connecticut common law requiring an election of remedies was the same as in Massachusetts. It was stated in Crompton v. Beach, 1892, 62 Conn. 25, 25 A. 446,

> Two inconsistent courses being open to [sellers] they must elect which they would pursue, and, electing one, they are debarred from the other. Reclaiming the goods would show an election to forego the right to recover the price.

The change in the law of that state was described by Sklarz, Repossession and Deficiency Judgments, 2 Conn.L.Rev. 202, 207 (1969), as follows:

> Clearly repossession should occur only after all other attempts to salvage the agreement have failed. The U.C.C., unfortunately, presents it as a first line, rather than as a last ditch solution.

The following general comment appears in Clark, Default, Repossession, Foreclosure and Deficiency: A Journey to the Underworld And a Proposed Solution, 51 Oreg.L.Rev. 302, 330 n. 116a (1972):

> Article 9's broad authorization of acceleration clauses, its elimination of the election of remedies doctrine, its limit on damages for wrongful repossession, its authorization to repossess even in the absence of a clause in the security agreement, its repeal of the notice and redemption provisions found in the Uniform Conditional Sales Act—all of these pro-creditor provisions go beyond merely authorizing self-help and get the state deeply involved in expanding the right of repossession.

The extent of state involvement in self-help repossession cannot be understood except in conjunction with Massachusetts and Connecticut consumer protection legislation regulating retail instalment sales of motor vehicles. The Massachusetts statute, Mass.G.L. c. 255B was passed in 1958, the year in which the U.C.C. was adopted, and provides in §§ 2–8 for the licensing and regulation of sales finance companies, in § 9 for the form and contents of retail instalment contracts, in § 20 for the non-enforceability of certain contractual provisions and in § 20A for repossession and deficiency judgment. Virtually every aspect of the relationship between the buyer and the finance company, except what shall constitute a default, is regulated in the greatest detail. Similar, though somewhat less comprehensive, statutes exist in Connecticut, C.G.S.A. §§ 42–83, 84, 96 and 98. In combination, the instalment sales and commercial code sections in both states "set forth a state policy, and the security agreements upon which the instant actions rest, whose terms are authorized by the statute and which incorporate its provisions are merely an embodiment of that policy." Adams v. Egley, *supra,* 338 F.Supp. at 618.

■ Unlike the contracts in the *Adams* case, at least one of the contracts in the instant proceedings (C.A. No. 72–3513) does not refer specifically to the U.C.C. (another does, in C.A. No. 72–3299; copies of the contracts were not submitted in the other two cases). However, its terms are drawn from and often use the language of the pertinent statutes; and provide that "Seller's remedies hereunder are in addition to any given by law and may be enforced successively or concurrently." In these circumstances, omission in a contract of reference to specific statutes makes no difference. As a practical matter, the statutes of both states governing the financing of the instalment sale and repossession of collateral are so comprehensive and detailed that they pre-empt the field. In our opinion, whatever authority to repossess without judicial process existed prior to the enactment of

the statutes, all repossessions since their enactment are made under their color and constitute state action.

Additionally, the provision in § 9–503 that repossession may proceed without judicial process only if this can be done without breach of the peace probably results in a close working arrangement between repossessors and the police and court officials authorized to issue process. In Michel v. Rex-Noreco, Inc., No. 6729 (D.Vt., Nov. 1, 1972), the court found as a fact, "The defendant's representatives informed the plaintiff that repossession could be carried out peaceably by having a county sheriff accompany the defendant's agent, consistent with the provisions of the Uniform Commercial Code." According to the allegations in the complaints in the instant proceedings, repossession was accomplished not only without notice but in plaintiffs' absence. In two cases, repossession is alleged to have occurred at night. It would seem sensible for a person engaged in the stealthful reclamation of motor vehicles during the nighttime to have at least frequent communication with the police, lest he be taken for a car thief, or to have police assistance available on a stand-by basis should he be assaulted while walking up a debtor's driveway or trying to start a slow-starting debtor's automobile. However, plaintiffs ordinarily have no way of learning whether repossessors and law enforcement agents of the state customarily collaborate in a particular community except by discovery in connection with a law suit like the instant proceedings. If given the opportunity, plaintiffs may be able to show specific, active involvement in repossessions by state officials, as was done in Michel v. Rex-Noreco, Inc., supra, in addition to the underlying state involvement which we have endeavored to explain and on which we mainly rely. Thus, quite apart from the reasons for denying dismissal which have already been stated, the court believes that the complaints should not be dismissed at least until after giving plaintiffs an opportunity to discover the nature and details of any special relationship between the defendants and police and court officers.

Finally, in denying the motion to dismiss C.A. No. 73–32 which pertains to the law of Connecticut, we are aware of Shirley v. State National Bank, No. 15,319 (D.Conn., April 2, 1973) in which the United States Court for the District of Connecticut reached the opposite result in an identical case and granted a motion to dismiss on the same ground urged by defendants here, that they were not acting under color of law within the meaning of 42 U.S.C. § 1983. Ordinarily we would of course adopt as our own the interpretation of Connecticut law by a court sitting in Connecticut. The problem with such a course in this instance is that the action based upon Connecticut law, C.A. No. 73–32, was consolidated for hearing with three Massachusetts cases, and, insofar as we can ascertain, there is no substantial difference between the law of the two states on the subject at issue. Also, there is no indication in the court's ruling in Shirley v. State National Bank that the parties undertook to demonstrate to the court the changes in the law of Connecticut brought about by its enactment of the U.C.C. Lastly, we do not attach significance, as did the Connecticut judge, to footnote 12 to the opinion of the Supreme Court in Fuentes v. Shevin, supra, 407 U.S. at 79, 92 S.Ct. at 1993, "The creditor could, of course, proceed without the use of state power, through self-help, by 'distraining' the property before a judgment." The Court there was alluding to a procedure which existed in ancient times, centuries before state power took the form of encompassing commercial codes and consumer protection legislation.

Accordingly defendants' motions to dismiss are denied in all four cases; and plaintiffs' motions for summary judgment will be scheduled for hearing.

So ordered.