William **KIRKSEY**, Plaintiff,

v.

Gene **THEILIG**, as agent of The East Colorado Springs National Bank and The East Colorado Springs National Bank, a Colorado corporation, Defendants.

Gerald **CHASE**, individually and for all others similarly situated, Plaintiff,

v.

**CHRYSLER CREDIT CORP.** and Gary Ford, as agent for Chrysler Credit Corp., Defendants.

Nos. C–4203, C–4230.

United States District Court, D. Colorado.

Nov. 30, 1972.

James Robert Barash and James W. Kin, Pikes Peak Legal Services, Colorado Springs, Colo., for plaintiff Kirksey.

Goodbar, Goodbar & Fischer by Mr. William D. Goodbar, Colorado Springs, Colo., for defendants Theilig and The East Colorado Springs National Bank.

Loa E. Bliss, Pikes Peak Legal Services, Colorado Springs, Colo., for plaintiff Chase.

Hellerstein & Hellerstein, P. C., by Stephen A. Hellerstein and Martin H. Shore, Denver, Colo., for defendant Chrysler Credit Corp.

## MEMORANDUM OPINION AND ORDER

ARRAJ, Chief Judge.

These two cases have not been consolidated, but because they present identical questions, we will deal with both cases in this one opinion. The questions are (1) whether defendants' self-help repossessions of plaintiffs' automobiles, pursuant to their respective agreements and as authorized by Colorado's Uniform Commercial Code, C.R.S. § 155–9–503 (1963), were actions "under color of" state law within the meaning of 42 U.S.C. § 1983 (1964), and its jurisdictional counterpart, 28 U.S.C. § 1343(3) (1958); and, (2) if so, did the repossessions, made without prior notice or an opportunity for a hearing, violate plaintiffs' rights to due process under the Fourteenth Amendment of the United States Constitution.

In *Chase*, plaintiff alleges that on July 19 of this year, defendant Chrysler Credit Corporation, through its agent, defendant Gary Ford, repossessed plaintiff's car from a parking lot in Colorado Springs, Colorado, without prior notice or an opportunity for a hearing. It appears that Chrysler Credit was the assignee of a security agreement covering plaintiff's car. The security agreement provided for repossession by the secured party upon default, as authorized by § 9–503 of the U.C.C., and presumably defendant was acting pursuant to the agreement and the statute when the car was repossessed. Plaintiff, in an amended complaint, has sought to expand his action to one on behalf of a class of persons who have had their cars similarly repossessed by defendant Chrysler Credit.

Plaintiff in *Kirksey* alleges that on July 6, 1972, his car was also towed away from a parking space without prior notice or an opportunity for a hearing. In this case defendant Theilig, acting as agent for defendant East Colorado Springs National Bank, made the repossession. According to the complaint, prior to the repossession, indeed before his payment was due in June, plaintiff had encountered financial difficulty and had arranged with Theilig to make a double payment in July. Theilig, however, decided to go ahead and repossess the car before this next payment came due. It appears that plaintiff had entered into a loan agreement with defendant East Colorado Springs National Bank for the purchase of his car and that the bank's agent was acting pursuant to a clause in that agreement au-

thorizing repossession without notice upon default. Plaintiff alleges that defendant also relied upon § 9–503 of the U.C.C. in making the repossession.

In both cases plaintiffs pray for injunctive and declaratory relief and damages. The cases come before us now on cross motions for summary judgment and on defendants' motions to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted.

The question to be answered first is whether plaintiffs have alleged facts which constitute action "under color of" state law within the meaning of 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).[1] The thrust of plaintiffs' argument is that the existence of § 9–503 of the U.C.C.[2] authorizes self-help repossession

without prior notice or an opportunity for a hearing, encourages such repossessions, and thereby sufficiently involves the state in the acts of the defendants in these cases for their actions to constitute action "under color of" state law. Plaintiffs also point to several other state statutes which they contend authorize, encourage, and thereby involve the state in the acts of the defendants in these cases: C.R.S. § 155–9–504, authorizing and establishing the procedure for sale by the secured party after repossession; C.R.S. § 13–6–12, authorizing the Director of Motor Vehicles to issue a new title to the creditor after repossession; and C.R.S. § 13–6–44, providing that the secured party must notify the local police within 12 hours of the repossession or be subject to criminal sanctions.[3]

1. 42 U.S.C. § 1983 provides

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

28 U.S.C. § 1343(3) provides

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

Since plaintiffs have alleged that defendants acted "under color of" state law, we assume jurisdiction under 28 U.S.C. § 1343(3) and proceed to a determination of whether plaintiffs have stated a claim under 42 U.S.C. § 1983. Bell v. Hood, 327 U.S. 678, 681–683, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

2. C.R.S. § 155–9–503. Secured party's right to take possession after default.— Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession a

secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by an action. If the security agreement so provides, the secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. Without removal, a secured party may render equipment unusable, and may dispose of collateral on the debtor's premises under section 155–9–504.

3. Several federal courts have already dealt with precisely the issue before us; however, they have reached conflicting results. In Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972), appeal docketed, No. 72–1484, 9th Cir., Feb. 29, 1972, the U. S. District Court for the Southern District of California held that the existence of §§ 9503 and 9504 of the California U.C.C. was sufficient state involvement to raise a federal question since the statutes declared the state policy on self-help repossession, had a significant impact on the drafting of the contract provisions in question, and expressly authorized the repossession without notice or an opportunity for a hearing. A few weeks later and a few hundred miles to the north, the U. S. District Court for the Northern District of California reached the opposite conclusion. That court held in Oller v. Bank of America, 342 F.Supp. 21 (N.D.Cal. 1972), that the private actions of repossession by private parties, authority for which was "based on a contractual right

In dealing with the question of whether repossessions by private individuals authorized by these state statutes constitute action "under color of" state law, it might be useful at the outset to attempt to state what these cases do not involve. First, it is clear that the cases before us do not involve a state law which requires or compels private wrongful acts. *See, e. g.,* Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); Adickes v. Kress, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Lombard v. Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338 (1963); Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323 (1963); *cf.* Robinson v. Florida, 378 U.S. 153, 84 S.Ct. 1693, 12 L.Ed.2d 771 (1964). Nor do these cases involve the state putting its force behind private unconstitutional acts. *See, e. g.,* Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948). Nor were the acts in these cases taken in active concert with state officials. *See, e. g.,* United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1965).

Though more disagreement may be encountered on the subject, we further feel that, since the self-help repossessions made here appear to have been made without a breach of the peace,[4] these cases cannot be said to involve private parties acting under a semblance or pretense of being the state's agent, exercising its force and authority. *See, e. g.,* Williams v. United States, 341 U.S. 97, 71 S.Ct. 576, 95 L.Ed. 774 (1950); Griffin v. Maryland, 378 U.S. 130, 84 S. Ct. 1770, 12 L.Ed.2d 754 (1964). Moreover, since retaking of property by private persons under the same or similar circumstances as occurred here has a long, established heritage,[5] the repossessions in these cases cannot be easily compared to acts of private individuals performing essentially governmental or public functions. *See, e. g.,* Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Terry v. Adams, 345 U.S. 461 (1953); Marsh v. Alabama, 326 U.S. 501, 66 S.Ct. 276, 90 L. Ed. 265 (1946); Nixon v. Condon, 286 U.S. 73, 88, 52 S.Ct. 484, 76 L.Ed. 984 (1932).[6]

which had been judicially approved prior to the adoption of the statutes in question," did not amount to state action or action "under color of" state law. Later, the U. S. District Court for the Western District of Virginia, in Greene v. First National Exchange Bank of Virginia, 348 F.Supp. 672 (W.D.Va.1972), followed suit. That court held that self-help repossession under § 9–503 was not violative of the the due process clause because the state action involved was only indirect and passive. *Accord* Hampton v. The Bank of California, Civil No. 71–1986 S.W., N.D.Cal., March 3, 1972, *appeal docketed,* 72–1888, 9th Cir., April 3, 1972; McCormick v. First National Bank of Miami, 322 F.Supp. 604 (S.D.Fla.1971) (a pre-*Fuentes* case); Messenger v. Sandy Motors, Inc., 121 N.J.Super. 1, 295 A.2d 402 (1972).

4. Section 9–503 itself requires that the repossessions be consummated without a breach of the peace, though when a breach of the peace actually occurs is not entirely clear. *Compare* Morris v. First National Bank & Trust Co. of Ravenna, 21

Ohio St.2d 25, 254 N.E.2d 683 (1970) *with* Cherno v. Bank of Babylon, 54 Misc. 2d 277, 282 N.Y.S.2d 114 (1967), *aff'd,* 29 A.D.2d 767, 288 N.Y.S.2d 862. Different state action questions might arise in cases where police are summoned to aid the repossessor or where the repossessor enters the debtor's private dwelling over the debtor's objection. We confine this discussion, therefore, to the facts of these cases, where the repossessions appear to have been of automobiles from public parking places and where it appears that no unyielding objection was made by the debtor then in possession or by his agents.

5. This fact and the historical references were alluded to in Fuentes v. Shevin, 407 U.S. 67 at 79 n. 12, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).

6. Though it may be difficult to determine in a given case just when someone is performing a "governmental function," this concept may be one ground for distinguishing several cases relied on by plaintiffs. *See, e. g.,* Hall v. Garson, 430 F.2d 430 at 439 (5th Cir. 1970); McMeans v. Schwartz, 330 F.Supp. 1397 at 1399 (S.D.

Nevertheless, plaintiffs contend that state authorization and encouragement of the private self-help repossessions is sufficient state involvement in the private acts of defendants for those acts to constitute action "under color of" state law. To support this proposition plaintiffs rely primarily on the case of Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967). In that case the California Supreme Court found that the state statute in question, which provided that every person had the right to rent or sell his property to whomever he in his sole discretion chose, was passed in order to overturn prior anti-discrimination statutes. Because of this fact, the court concluded that the statute would "significantly encourage and involve the state in private discriminations." The United States Supreme Court agreed with these conclusions and held that the private discriminations under the statute involved state action and were therefore unconstitutional.

Reitman is similar to the cases before us in that the statutes in question here do authorize the self-help repossessions; indeed, unlike Reitman they do so on their face.[7] However, Reitman is quite dissimilar from our present cases in at least two respects. First, in Reitman it was found that the purpose of the stat-

ute was to authorize what had been formerly expressly prohibited. Because of this legislative background, the statute was found to encourage racial discrimination. It changed the red light on discrimination in the housing market to a green light. Thus, the state might be said to have been an accomplice in, if not the instigator of, the private discriminations. Cf. Anderson v. Martin, 375 U.S. 399, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964); Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S. Ct. 856, 6 L.Ed.2d 45 (1961). In our cases, on the other hand, any kind of encouragement of the private acts by the state is nearly non-existent.[8] Hence the state is not involved (if authorization can be called involvement) in the private repossessions in these cases in any way near the manner or degree it was involved in the private discriminations in Reitman.

Second, we are not convinced that the resolution of the state action question in Reitman can be directly applied to the situation here. That case involved racial discrimination; these cases do not. That fact is significant because in cases involving racial discrimination, there is a long history of state attempts to do indirectly what the states knew they were prohibited from doing directly—encour-

---

Ala.1971); and cases cited in text infra at n. 12. See also Palmer v. Columbia Gas. Co., 342 F.Supp. 241, 246 (N.D. Ohio 1972).

7. Defendants' argument that the authorization is "neutral" contradicts the reasons for the statute's adoption and adds nothing to an analysis of the problem. Cf. Lavoie v. Bigwood, 457 F.2d 7 at 11–12 (1st Cir. 1972). Consequently, we give no weight to that contention. Similarly, defendants' argument that authority to repossess is derived solely from the contract and not the statute is without merit. Though it might be possible that the parties could agree to the same default provisions without the existence of the U.C.C., at present it is obvious to us that authority for the repossessions arises from both the agreements and the U.C.C. Cf. Williams v. Yellow Cab Co. of Pittsburgh, 200 F.2d 302 (3rd Cir. 1952). Further, if the U.C.C. did not exist, it is

not clear to us why the same "authorization" problems could not arise under the common law. But see Oller v. Bank of America, supra, 342 F.Supp. at 23 distinguishing DeCarlo v. Horne & Co., infra, and Klim v. Jones, infra, on this ground.

8. We would be less than candid if we did not note that the private activity can be interpreted as being encouraged by the statutes. But encouragement exists only in the very limited sense that under the statutes the secured parties have less risk in making the repossessions than they would if there were no statutes or case law on the subject. Moreover, encouragement seems less of a fact in that the statute authorizes other means of repossession as well. The self-help repossessions are really encouraged more by economic considerations than by anything else.

aging or enforcing racial discrimination. *See, e. g.,* Anderson v. Martin, *supra,* 375 U.S. at 404, 84 S.Ct. 454; Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944) *and* Rice v. Elmore, 165 F.2d 387 (4th Cir. 1947), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948). Thus there is an element of intentional circumvention in *Reitman* and other similar cases that is completely lacking here. In cases of racial discrimination, the courts are often forced to look through the form of the activity in order to find its tainted substance.[9] In the present cases the form and the substance are the same. The states have authorized these self-help repossessions because they have found them to be historically sound and economically desirable from the standpoint of the large majority of debtors and creditors alike, not because they were trying to circumvent recognized and long-standing constitutional mandates. For these reasons, we feel that *Reitman* does not and should not govern the result in these cases.

Moreover, we deem it unwise to stretch the rationale of *Reitman* to apply to the facts here, for we fear that what might be reason in one case may be nonsense in another. Indeed, if we accept plaintiffs' proposition, we do not understand why plaintiffs' own actions would not also amount to state action, raising the same due process questions. Nonpayment of a monthly installment without prior notice of an opportunity for a hearing is also authorized in certain situations by the U.C.C. and other state laws. If mere authorization constitutes state action, then both repossession by the creditor and non-payment by the debtor should come within the ambit of the Fourteenth Amendment and the statutes thereunder.[10]

True, "only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." Burton v. Wilmington Parking Authority, *supra,* 365 U.S. at 722, 81 S.Ct. at 860. However, the facts here disclose that the state's only real "involvement" in the private repossessions of the defendants is the statutory authorization of those repossessions. The physical acts of withholding police action and of transferring the title to the creditor are minimal, for the most part ministerial, and, we feel, do not add significantly to any state involvement that exists because of the statutory authorization.[11] *Cf.* Evans v. Abney, 396 U.S. 435, 90 S.Ct. 628, 24 L.Ed.2d 634 (1970). In the context of these cases, it is our judgment that authorization of self-help repossessions is not enough to sufficiently involve the state in the acts of the defendants here for their acts to be action "under color of" state law. *Cf.* Kerrigan v. Boucher, 326 F.Supp. 647 (D.Conn.1971), aff'd, 450 F.2d 487 (2d Cir. 1971); Warren v. Cummings, 303 F.Supp. 803 (D.Colo. 1969); Weyandt v. Mason's Stores, Inc., 279 F.Supp. 283 (W.D.Pa.1968); *contra* Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); Gross v. Fox, 349 F.Supp. 1164 (E.D.Pa.1972); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390 (N.D.Ill.1972); Hill v. Toll, 320 F.Supp. 185 (E.D.Pa. 1970); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970); DeCarlo v. Horne & Co., 251 F.Supp. 935 (W.D.Pa.1966).[12]

---

9. This may explain the result in McCabe v. Atchison, Topeka & Santa Fe Ry., 235 U.S. 151, 35 S.Ct. 69, 59 L.Ed. 169 (1914).

10. Brief for Appellant, Adams v. Egley, 338 F.Supp. 614 (S.D.Cal.1972), *appeal docketed,* No. 72–1484, 9th Cir., Feb. 29, 1972.

11. Indeed, in Moose Lodge No. 107 v. Irvis, *supra,* a much greater degree of physical involvement by the state in a private club's activities was held insufficient for the club's racial discrimination policies to be action "under color of" state law.

12. See discussion *supra* at n. 6. Two other cases cited by plaintiff are not apposite since they involve the force of the state being directly applied to the private activities, Holt v. Brown, 336 F.Supp. 2 (W.D.Ky.1971), or significant participation by state officials, Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970).

Because the state's encouragement of and therefore involvement in the private acts here at issue is much less than it was in *Reitman,* because we deem it unwise to expand the rationale of *Reitman* to the present cases, and because the facts of this case do not otherwise disclose to us any significant involvement by the state in the private self-help repossessions, we conclude that the existence of § 9–503 of the U.C.C. and the other related statutes does not sufficiently involve the state in the acts of defendants herein for their acts to constitute action "under color of" state law, within the currently understood meaning of that phrase.[13]  Accordingly, defendants' motions to dismiss are granted and it is

Ordered that plaintiffs' complaints and causes of action be, and the same hereby are dismissed.

13. Since the above resolution of the "under color of" state law question disposes of these cases, we do not reach the question of whether the repossessions deprive plaintiffs of their rights to due process under the Fourteenth Amendment.