362 F.Supp. 374 (1973)
Leola NICHOLS, for herself and all others similarly situated, Plaintiff,
v.
TOWER GROVE BANK, a banking corporation, for itself and all others similarly situated as a class of defendants et al., Defendants.
No. 72 C 677(2).
United States District Court, E. D. Missouri, E. D.
August 7, 1973.
*375 D. Sherman Cox, St. Louis, Mo., for plaintiff.
C. Perry Bascom and Thomas C. Walsh, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Tower Grove Bank & Trust Co.
John C. Danforth, Atty. Gen., Peter H. Ruger and Mark D. Mittleman, Asst. Attys. Gen., Jefferson City, Mo., for Warren E. Hearnes, etc., James E. Schaeffner, etc. and Gary H. Burmeister.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This case arises out of the "self-help" repossession of an automobile by the holder of a security interest and the subsequent issuance of a "repossessed title." Jurisdiction is premised on Section 1343, 28 U.S.C., on the theory that the suit is authorized by Section 1983, 42 U.S.C. Defendants have moved to dismiss on the ground that we have no jurisdiction.
The facts are not in dispute. In September, 1971, plaintiff purchased a used 1969 Chevrolet automobile from a dealer, and in connection with such purchase executed an installment promissory note and a retail installment contract which set forth the terms and conditions of the security arrangement pursuant to which *376 the automobile was purchased. The contract expressly authorized the secured party to repossess the automobile in the event of default. It provides for notice to be given to the buyer prior to any sale, public or private.
A certificate of ownership was issued in plaintiff's name. Shortly thereafter the contract and note were assigned to Tower Grove Bank and Trust Company (Bank), the Bank's lien being noted on the certificate of title as provided for under Section 301.600, V.A.M.S. Plaintiff defaulted in making at least three monthly installment payments,[1] following which the Bank accelerated the note in accordance with its terms and peacefully exercised its right under the contract to repossess the automobile without judicial notice or assistance.
Subsequently, the Bank proceeded to foreclose its security interest in the automobile by selling it at private sale. There is no contention that the sale was not conducted in a commercially reasonable manner as required by Section 400.9-504(3), V.A.M.S. In connection with the repossession and sale, the Bank mailed an Affidavit of Repossession to the Department of Revenue of the State of Missouri and in due course received a "repossessed title" which it delivered, duly assigned, to the purchaser at private sale. The procedure it followed was mandated by Section 301.215, V.A. M.S.
Initially, we note that the Uniform Commercial Code (Section 400.9-503, V. A.M.S.) recognizes a secured creditor's right of peaceable self-help repossession without judicial process. Such right had long existed at common law independent of statute. See Gill v. Mercantile Trust Company, Mo.App., 347 S.W. 2d 420. Although plaintiff does not in terms attack the validity of Section 400.9-503, V.A.M.S., she complains, in effect, that as the result of the Bank's action in taking possession without judicial process or prior notice she was deprived of an opportunity "to present her evidence of defense before any impartial judicial tribunal."
As we see the facts, the Bank was simply acting in conformity to the private contract between the parties, and its conduct in repossessing the automobile involved no state action. It is true that the repossession without judicial process was permitted by the state but it is equally true that the act was not commanded by the state. "What we have here is a private act taken by a private organization to protect its security interest in personal property that is subject to [a written installment contract]." Oller v. Bank of America, D.C. Cal., 342 F.Supp. 21, 23.
We agree with Chief Judge Urbom of the District of Nebraska in ruling a similar matter in Pease v. Havelock National Bank, 351 F.Supp. 118, that the state action which is necessary for federal jurisdictional purposes is not present under the facts we have recited.
Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556, relied on by plaintiff, is inapposite. In that case, by a 4 to 3 decision, the Supreme Court invalidated pre-judgment replevin statutes under which goods were subject to seizure by judicial process on an ex parte application. In Fuentes state power was utilized to summarily seize, through court officers, property in the possession of the debtor without notice or an opportunity to be heard. Hence, the existence of state action as a jurisdictional predicate for the suit was not, nor could it have been, in dispute. Absent state *377 action, we have no jurisdiction to rule the issue of due process under Section 1343.
Of course, more is involved in the present case than a debtor's possessory interest in the automobile. After the Bank obtained possession through self-help, it proceeded to foreclose the security interest and sell the automobile. No attack is made upon the procedure employed in respect to the sale, plaintiff's complaint being limited to the contention that her possessory, not her ownership, interest was wrongfully taken from her without notice.[2] That the Bank was under a good faith duty to dispose of the collateral after it was legally seized cannot be, and indeed is not, questioned. Hence, the fact that after it took possession the Bank sold the automobile pursuant to the contract does not change the posture of the case. This brings us to the major contention of plaintiff  that the issuance of a "repossessed title" to the Bank pursuant to Section 301.215 V.A.M.S., which does not in terms mandate a hearing prior to such issuance, constitutes state action sufficient for jurisdictional purposes under Section 1343. We hold that it does not.
To put the matter in proper perspective, it is important to note that had the collateral been any tangible personal property other than a motor vehicle the issue of state action would not be in the case, since the Bank could exercise its power of sale and convey the title of the debtor to the purchaser of the property with no state involvement whatsoever.
Automobiles are in a different category than other personal property, not because of any interest of the state in the actual passage or transfer of the title per se, but because of special considerations which are based on the nature of motor vehicles which impelled the enactment of Section 301.210, V.A. M.S. Therein it is provided that no sale of a motor vehicle is valid without the assignment and delivery of the certificate of ownership duly endorsed. This statute, "a police regulation of the highest order", was "designed to hamper the traffic in stolen automobiles and to prevent fraud and deceit in the sale of used cars." Greer v. Zurich Insurance Company, Mo., 441 S.W.2d 15; and see State v. Glenn, Mo., 423 S.W.2d 770, 774, and Mackie and Williams Food Stores v. Anchor Casualty Co., 8 Cir., 216 F.2d 317.
Recognizing the difficulties which reasonably might be encountered in connection with the repossession of an automobile and its subsequent disposition pursuant to contract, in light of the necessity of assigning the certificate of ownership, the State made provision in Section 301.215 for the issuance of a substitute Certificate of Ownership for use in such instances. The statute authorizes the holder of an indebtedness secured by a security agreement, after repossessing a motor vehicle in accordance with terms of the contract, to obtain a new certificate of ownership ("Repossessed Title") upon compliance with certain requirements. The holder of the indebtedness is required to make a verified application to the Director of Revenue setting forth the essential facts and pay the designated fee, following which the Director is required to give the owner (as shown on the last prior Certificate of Ownership) ten days notice before issuing the certificate (unless the owner consents in writing to such issuance), informing the owner of the making of the application for a repossessed title and the date on which such title will be issued. Included with such notice is a copy of the application and the supporting affidavit of the holder of the security agreement.
Plaintiff makes no claim that the requisite notice was not given her by the Director of Revenue nor that she took any action whatever during said ten-day *378 period to question or object to the issuance of the title. Absent any such objection or other action on the owner's part, the issuance of a repossessed title is a mere ministerial act which follows, but constitutes no part of, the repossession. Under the facts, the nature and extent of the foregoing state involvement in connection with the later sale of the automobile is not, in our judgment, such as to require a finding of the requisite state action.
The basic thrust of the complaint is that the Bank deprived plaintiff of her property under color of state law. As appears supra, all that the Bank did was repossess the automobile and thereafter sell it, all as authorized by the contract between the parties. The state was not a joint participant with the Bank and in no way directed or required the Bank to either repossess or sell the car. At the time of the self-help repossession, plaintiff was in default, having failed to make the payments provided for in the note and security document. As the holder of a valid existing security interest in the automobile the bank was entitled, under settled principles of common law and by the express provisions of the contract, to the possession of the automobile. "The recognized rule" in Missouri, as stated in Day v. National Bond & Investment Co., Mo. App., 99 S.W.2d 117, 118, "is that after condition broken the mortgagee of personal property, at least for the purpose of possession and due foreclosure, is regarded as the absolute owner." See also Personal Finance Company of St. Louis v. Endicott, Mo.App., 238 S.W.2d 51, 55.
The issuance of a certificate of ownership (captioned "Repossessed Title") under the terms of Section 301.215 occurs only after the debtor has been "deprived" of her possessory interest pursuant to the self-help provision of the contract, and not even then unless the lien-holder applies for such certificate. If for any reason the Bank was guilty of misconduct in repossessing and selling the car, its conduct was not under "color of law," and plaintiff can obtain relief based thereon in a state court of competent jurisdiction.
The certificate is not a muniment of title. It did not operate to create ownership in the Bank but served merely to evidence the Bank's interest and "to identify it as the person responsible for the operation and use of the motor vehicle." Accordingly, we hold that the motion of Tower Grove Bank and Trust Company to dismiss for lack of jurisdiction is well taken.
Joined as defendants are various state officials (the Governor, the Director of Revenue and the Supervisor of Motor Vehicles).[3] The relief sought against them is a declaratory judgment respecting the validity of Section 301.215 and an injunction against its further utilization. However, the certificate having been issued prior to the institution of this action there could be no present controversy between the state officials and plaintiff. So far as plaintiff is concerned, the declaratory adjudication would be simply an advisory opinion of no present benefit to her.
In an apparent attempt to avoid this problem, plaintiff has alleged that she also sues as a representative of a class consisting of "all Missouri residents who since June 12, 1973 (the date Fuentes was decided) have had or during the pendency of this action will have motor vehicles repossessed by members of defendant's class[4] and repossessed title has been issued by defendant agent of the *379 State of Missouri without judicial process."
Having concluded that we have no jurisdiction to adjudicate plaintiff's claim, it follows that we are similarly without jurisdiction over any claim of the class members or to determine whether this is a proper class action.
The motions of defendants to dismiss for lack of jurisdiction should be and are hereby sustained and this action is ordered dismissed without prejudice.
NOTES
[1] The fact of such default is not disputed. Plaintiff claims only that such payment should have been made by an insurance company under the terms of a health insurance policy which she was allegedly required to purchase. Although not relevant to the issue of this Court's jurisdiction, the Bank informs us, "for background purposes" that the insuror made one installment payment but declined to make other payments because of plaintiff's failure (in spite of the urgings of the Bank) to furnish the insuror with any monthly notices of her claimed disability required under her policy to supplement her initial claim.
[2] The statute (Section 400.9-504) requires that notice be given the debtor, as does the contract. Hence, in the circumstances we assume that the requisite notice was given. Otherwise the sale would be invalid, not because of any constitutional infirmity but because it failed to conform to the statute and contract.
[3] Wholly apart from other considerations, neither the Governor nor the Supervisor of Motor Vehicles was properly joined as a party. Only the Director of Revenue has any function whatever in the issuance of a repossessed title.
[4] Defendant's class, as alleged by plaintiff, is "composed of all lienholders of liens on motor vehicles in the State of Missouri who since June 12, 1972, have without benefit of judicial process repossessed motor vehicles of those persons listed as plaintiff's class."