No. 26328

**John Deere Company of Kansas City v. John Catalano**
(525 P.2d 1153)

Decided September 3, 1974.

Grant, Shafroth, Toll & McHendrie, J. Albert Sebald, for plaintiff-appellee.

John Ira Green, for defendant-appellant.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This appeal arises out of an action to recover the unpaid balance on a retail credit sales agreement and the collection costs incurred therein. The appellee, John Deere Company, was the holder of the instrument at the time the debtor appellant, John Catalano, defaulted. John Deere took possession of the security, sold it at public sale and sued Catalano for the deficiency. Judgment was entered for the amount of the deficiency, interest thereon and attorney's fees. Catalano appeals.

To put the case in proper perspective, we set out the facts in detail. On August 11, 1969, Catalano purchased a used combine from Colorado Farm Equipment Company. He signed a retail installment contract and security agreement in which he agreed to make a down payment of $1,544 and to pay the balance of $4,591.23 in three installments of $1,530.41 per installment. The contract provided that:

"In the event of default, holder may take possession of the GOODS and exercise any other remedies provided by law.

"This note shall be in default if I . . . shall fail to pay any installment when due . . . and in any such event the holder may immediately and without notice declare the entire balance of this note due and payable together with all expenses of collection by suit or otherwise, including reasonable attorney's fees."

Catalano made the down payment. The local implement store assigned the contract to John Deere Company. The first installment fell due on August 1, 1970. Catalano made no payment. A John Deere retail credit representative contacted Catalano. Catalano asked the agent for an additional three or four weeks to make payment. The agent agreed. Catalano again failed to pay the installment. The representative offered to accept one-half the August installment at that time and

the other half on January 1, 1971. Catalano responded that he did not have any money and could not pay. The agent told him that without some payment the company would have no alternative but to repossess the equipment. Catalano stated that he could not pay until January, 1971. The agent explained that the combine would be sold at auction and if it did not bring as much as the outstanding debt against it, Catalano would be liable for the deficiency.

The agent left Catalano's farm and went back to Alamosa. He and a mechanic then returned to the farm. They got the combine ready for the road, and the mechanic drove it back to Alamosa. Catalano was not present when the combine was taken from his farm, and no one protested or resisted its removal.

Notice of sale was published in the local paper. Five or six dealers in John Deere equipment were contacted and two pre-sale bids were received. Nine persons appeared at the sale including Catalano. Roy Nelson, Catalano's neighbor and partner in business, purchased the combine for $2800. Shortly after the sale, Catalano borrowed money from a local bank and purchased the combine from Nelson for $2810.

John Deere filed suit in Arapahoe County District Court for the deficiency of $1,300.59 remaining on the contract plus the accrued interest. On Catalano's motion, the action was transferred to the district court for Alamosa County. At a trial to the court, John Deere was awarded judgment of $1,638.84 plus costs and attorney's fees of $1,500.

On appeal, Catalano asserts that (1) John Deere's repossession and sale of the security was an unconstitutional taking of his property without due process of law and (2) the award of $1,500 for attorney's fees is excessive as a matter of law. We find no merit with either of these contentions and, therefore, affirm the trial court's judgment.

I.

Catalano argues that due process requires that he should have been given a proper notice and an opportunity to be heard in court before his property was repossessed, and that John Deere's failure to follow this procedure requires the deficiency judgment to be set aside.

In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556, the United States Supreme Court struck down, as violative of due process, prejudgment replevin statutes which allowed the seizure of goods by state agents upon an *ex parte* application of the secured creditor. The Court held that the due process clause requires the state to provide a debtor, who is in possession of the security, with a hearing on the issue of whether he has a right to continued possession *before* the seizure of the goods on behalf of the secured party. However, in *Mitchell v. W. T. Grant Company,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406, the court retreated from this broad principle in upholding Louisiana's sequestration statute. (See J. Powell's concurring opinion). Mr. Justice White, writing for the majority stated, that *Mitchell* "will not affect recent cases dealing with garnishment or summary self-help remedies of secured creditors or landlords." For the purpose of this review, we assume that the holding of *Fuentes* would require a prior hearing if the state is sufficiently involved in the repossession so as to invoke the due process clause of the Fourteenth Amendment.

Catalano maintains the enactment of C.R.S. 1963, 155-9-503 (Vol. 7A) satisfies the state action requirement. That provision provides:

"Unless otherwise agreed, a secured party has on default the right to take possession of the collateral. In taking possession, a secured party may proceed without judicial process if this can be done without breach of peace . . ."

He cites only *Adams v. Egley,* 338 F. Supp. 614 (Cal. S.D. 1972) for support of his contention. *Adams* holds that the enactment of an identical provision for self-help in the California Commercial Code was sufficient state involvement in the acts of summary repossession to invoke the Fourteenth Amendment. That district court decision, however, was reversed by the Ninth Circuit in *Adams v. Southern California First National Bank,* 492 F.2d 324 (9th Cir. 1973). The Ninth Circuit held that the state involvement did not rise to the level of state action. Therefore, the circuit court found no cognizable federal claim under the Fourteenth Amendment.

In addition to the *Adams* case, numerous courts have ruled on the issue presented here. The overwhelming majority, including the United States District Court for the District of Colorado have found the requisite state action lacking. *Kirksey v. Theilig,* 351 F. Supp. 727 (D. Colo. 1972); *Gibbs, et al. v. Titleman, et al.,* 502 F.2d 1107 (3d Cir. Aug. 1974); *Shirley v. State National Bank of Conn.,* 493 F.2d 739 (2d Cir. 1974); *Oller v. Bank of America,* 342 F. Supp. 21 (N.D. Cal. 1972), *aff'd; Adams v. Southern California First National Bank, supra; Greene v. First National Exchange Bank of Va.,* 348 F. Supp. 672 (W.D. Va. 1972); *Pease v. Havelock National Bank,* 351 F. Supp. 118 (D. Neb. 1972); *Baker v. Keeble,* 362 F. Supp. 355 (M.D. Ala. 1973); *Nichols v. Tower Grove Bank,* 362 F. Supp. 374 (E.D. Mo. 1973); *Shelton v. General Electric Credit Corp.,* 359 F. Supp. 1079 (M.D. Ga. 1973); *Kipp v. Cozens* 40 Cal. App. 3d 709, 115 Cal. Rptr. 423 (1974); *Brown v. United States National Bank of Oregon,* 265 Or. 234, 509 P.2d 442; *Messenger v. Sandy Motors Inc.,* 121 N.J. Super 1, 295 A.2d 402; *Giglio v. Bank of Delaware,* Del. Ch., 307 A.2d 816; *Northside Motors of Florida, Inc. v. Brinkley,* Fla., 282 So.2d 617.

We believe the majority represent the better reasoned decisions and we see no reason to elaborate extensively on their reasoning. Suffice it to say, that in Colorado, as elsewhere, the state's traditional rule has been to allow the secured creditor to repossess the security if the contract so provides and the repossession does not "breach the peace." In such cases, the creditor was not liable for conversion. *International Harvester Co. of America v. Lawrence Inv. Co.,* 95 Colo. 523, 37 P.2d 529; *Hurt v. Hubbard,* 41 Colo. 505, 92 P. 908; *Horn v. Reitler,* 12 Colo. 310, 21 P. 186. While the enactment of section 155-9-503 of the Uniform Commercial Code provides for self-help repossession in absence of contrary contract provisions, it adds nothing to the situation where the parties have previously agreed on such a remedy and the procedure is carried out without significant state help. As the minority in *Fuentes v. Shevin, supra,* points out, the majority opinion clearly distinguishes between the state

action interdicted in Fuentes and private repossession authorized by agreement between the parties. We find no violation of the Fourteenth Amendment or our own due process clause present here. A cogent capsulized argument supporting this position appears in 44 *U. Colo. L. Rev.* 389, 408-412.

■ Certainly as applied to the case at bar, the equities are with the creditor. John Deere gave Catalano every opportunity to avoid default. Only after Catalano refused to make any effort to pay and, was informed that John Deere had no choice but to repossess the combine, did John Deere resort to repossession. Hence, as applied here, the statute is not unconstitutional.

## II.

Secondly, Catalano maintains that the award of $1,500 for John Deere's attorney's fees should be set aside. He argues the fee of $1,500 was excessive considering the fact that the fee is based upon a claim for a deficiency judgment of $1,300.59.

John Deere retained a Denver attorney. This action was filed in the district court of Arapahoe County for a deficiency judgment of $1,300.59, interest, and attorney's fees. The claim for attorney's fees on a contract provision in the security agreement provided for "all expenses of collection by suit or otherwise, including reasonable attorney's fees." Catalano filed a motion for a change of venue to the district court for Alamosa County. John Deere confessed the motion and the motion was granted. Catalano filed an answer denying the allegations of the complaint and in a pretrial motion to dismiss he raised the constitutional issue with which we dealt above. At the trial, John Deere's attorney testified that he spent 51-1/2 hours on the case which included investigation of the claim, research on the constitutional issue, travel time and proceedings before the court. One and one-half hours of that time was spent on the change of venue motion. He further testified that John Deere agreed to pay $30 an hour for his time and that it was a reasonable rate for this type of work. An Alamosa attorney also testified that $30 an hour was a reasonable rate to charge in this case.

The trial court excluded the time spent on the change of venue motion, and based on the contract provision for reasonable attorney's fees, it awarded John Deere $1,500 for the fees incurred in the action.

■ Catalano argues that 1971 Perm. Supp., C.R.S. 1963, 73-2-413, imposes a statutory limitation on attorney's fees of fifteen percent of the unpaid debt after default. However, 1971 Perm. Supp., C.R.S. 1963, 73-9-101(3) provides that: "(3) Transactions entered into before October 1, 1971, and the rights, duties, and interests flowing from them thereafter, may be terminated, completed, consummated, or enforced as required or permitted by statute, rule of law, or other law amended, repealed, or modified by this code as though the repeal, amendment, or modification had not occurred, but this code applies to: . . ."
Since the transaction was entered into prior to October 1, 1971 and the attorney's fees provision is in article 2 and not article 5 of the Code, the limitation of section 73-2-413 does not apply to the case at bar.

■ Catalano next contends that the award is unreasonable as a matter of law because it exceeds the amount of the underlying deficiency judgment. In effect, Catalano maintains that a hypothetical creditor would not have agreed to pay attorney's fees of $1,500 on a claim worth $1,300.59 and, therefore, he should not be bound by the agreement between John Deere and its attorney. Firstly, we note that the judgment including interest exceeds the attorney's fees awarded here. Secondly, Catalano cites no authority for this proposition and we have found none. Thirdly, the equities in this action do not favor Catalano. He was given every opportunity to avoid default. He was told that John Deere would have no choice but to repossess the combine. He obtained a loan from the local bank to repurchase the machine from a neighbor who purchased it at the auction. As the trial court pointed out,
"[Catalano's] actions of repurchasing the combine through his business partner and neighbor were a calculated risk that he chose to obtain his property at a lesser price than what he had agreed to pay originally."

He made a bad business judgment. He forced John Deere to prosecute a lawsuit to obtain its due. Finally, the record supports the reasonableness of the award. *Waterman v. Sullivan,* 156 Colo. 195, 397 P.2d 739. Under such circumstance, the award does not shock our conscience, nor is it void as against public policy. Therefore, the trial court's judgment is not excessive as a matter of law. *Florence Oil & Refining Co. v. Hiawatha Oil, Gas & R. Co.,* 55 Colo. 378, 135 P. 454.

Accordingly, the judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE LEE do not participate.