## No. 26400

**Rosa E. Sifuentes, individually and on behalf of all others similarly situated v. Hugh C. Weed, Jr., individually and in his capacity as Director of the Colorado Department of Revenue, and General Motors Acceptance Corporation, a New York corporation, and Bill Dreiling Motor Company, a Colorado corporation**

(525 P.2d 1157)

Decided September 3, 1974.

Marshall A. Snider, Tucker K. Trautman, for plaintiffs-appellants.

John P. Moore, Attorney General, John E. Bush, Deputy, Dennis J. Sousa, Special Assistant, for defendant-appellee Hugh C. Weed, Jr.

Hellerstein, Hellerstein and Shore, P.C., Stephen A. Hellerstein, for defendant-appellee General Motors Acceptance Corporation.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

The automobile of plaintiff Rosa E. Sifuentes was repossessed by defendant General Motors Acceptance Corporation (GMAC) on November 16, 1972, for an alleged default on an installment sales contract. On December 14, 1972, plaintiff filed this class action in the District Court in and for the City and County of Denver, seeking to have certain statutes concerning the issuance of certificates of title and registration to repossessed motor vehicles declared unconstitutional and to enjoin the Director of the Department of Revenue of the State of Colorado from issuing a certificate of title or registration pursuant to these statutes. Subsequently, GMAC and Bill Dreiling Motor Company were joined as defendants. Defendants moved to dismiss and plaintiff moved for judgment in her favor. The trial court denied plaintiff's motion and granted the motion to dismiss. Plaintiff appeals from this order.

The facts in this case are undisputed. On July 27, 1971, plaintiff purchased a 1969 Pontiac automobile from Bill Dreiling Motor Company. She made a down payment and executed an installment sales contract. Dreiling retained a

security interest in the automobile for the balance of the purchase price. The contracts provided that:

"In the event buyer defaults in any payment due hereunder, . . . the seller shall have the right . . . to declare the unpaid balance . . . to be immediately due and payable. Further in any such event, seller . . . may take immediate possession of said property without demand . . . and for this purpose seller may enter upon the premises where said property may be and remove the same . . . .

"In the event of repossession of said property the seller shall have the rights and remedies provided and permitted by law including the right to apply the proceeds of disposition to the reasonable expenses of retaking, holding, preparing for sale, selling and the like, reasonable attorneys' fees as provided in provision 4 above, legal expenses incurred and satisfaction of indebtedness. Any surplus shall be paid to the buyer or as otherwise required by law. The buyer shall be liable for any deficiency.

"The requirement of reasonable notification of the time and place of any public or private sale or other intended disposition shall be met if notice thereof is mailed, postage prepaid, to the buyer and any other person entitled thereto ten (10) days prior to such sale or other disposition of the property."

Dreiling assigned its rights to GMAC. The mortgage was filed with the Department of Revenue. Pursuant to C.R.S. 1963, 13-6-23(1)(c), the certificate of title was transmitted by the Department to GMAC who retained possession of the certificate. Plaintiff defaulted on the payments. On November 16, 1972, GMAC repossessed the car. The repossession was without judicial process and did not involve a breach of the peace. Pursuant to C.R.S. 1963, 155-9-504, notice of public sale of the automobile was sent to the plaintiff. At the sale, GMAC purchased the vehicle. Plaintiff's counsel witnessed the sale. GMAC applied to the Department of Revenue for a new certificate of title. It is this action which the plaintiff seeks to enjoin.

I.

On appeal, plaintiff does not contest the constitutional

validity of the actions of GMAC in repossessing or selling the automobile, albeit they were governed by article nine of the Uniform Commercial Code. Rather, she argues that the Department of Revenue cannot constitutionally issue a new certificate of title without first notifying the debtor of the application and giving her an opportunity to show that GMAC is not so entitled. Without such a hearing, she contends, the Department acts largely in the dark in determining whether or not to issue a new certificate. She asserts that she stands to lose, if the new certificate is issued, her intangible right to use and dispose of the automobile.[1] Therefore, this statutory scheme is violative of the due process clause of the Colorado and federal constitutions. The defendants maintain that the mere issuance of a new certificate to GMAC does not deprive the plaintiff of any significant property rights. Therefore due process does not require that plaintiff be given notice or an opportunity to be heard before the Department. We agree with the defendant's contention and, therefore, affirm.

Our concern here is with the question of whether the statutes of the State of Colorado dealing with the issuance of certificates of title to motor vehicles to repossessors of motor vehicles comprise significant state involvement in the repossession activity so as to constitutionally require a hearing before a new title can issue to the repossessor.

The purpose of the Colorado Certificate of Title Act is well stated by Chief Justice Stone in *First Nat. Bank of Ogallala, Neb. v. Chuck Lowen, Inc.,* 128 Colo. 104, 108, 261 P.2d 158:

"Under our former policy in Colorado, the validity of chattel mortgages as to innocent third parties was dependent on recording or filing them in the office of the proper county clerk, analogous to the provisions for protection of title to real estate. However, the mobility of motor vehicles and their

---

[1] On stipulation of facts, plaintiff has admitted that she has no interest in the car so as to defeat GMAC's claim of ownership. Nor does she allege any injury in fact. Therefore, in a technical sense she lacks standing to challenge the validity of the scheme. We choose, however, to dispose of her claim on the merits.

frequent sale in states far distant from the county of the mortgage filing has resulted in a new method of protection by means of showing mortgages on the title certificate, which can be carried with the car, rather than by record in the files of a distant and probably unknown county."

It is a recording act by which prior interests can be ascertained and protected. *See Loye v. Denver United States Bank,* 341 F.2d 402 (10th Cir. 1965). Nevertheless the certificate of title is only prima facie evidence of all matters therein contained. C.R.S. 1963, 13-6-7(2). *Federico v. Universal C.I.T. Credit Corporation,* 140 Colo. 145, 343 P.2d 830. *See Nichols v. Tower Grove Bank,* 362 F. Supp. 374, 378, (E.D. Mo. 1973).

■ The activity of the Director of Revenue under our statute and case law in the issuance of a new title to a repossessor of a motor vehicle is strictly limited to the ministerial duty of providing prima facie evidence of what has already occurred by purely private action, namely, the transfer of title from the debtor to the creditor in a manner specifically provided for by their agreement. *See John Deere Co. v. Catalano,* 186 Colo. 101, 525 P.2d 1153. It does not in any meaningful way involve the Director in the repossession and subsequent transfer of ownership to the repossessor. *Kirksey v. Theilig,* 351 F. Supp. 727 (Colo. 1972). *See Nichols v. Tower Grove Bank and Trust Co.,* 362 F. Supp. 374 (E.D. Mo. 1973); *Kipp v. Cozens,* 40 Cal. App. 3d 709, 115 Cal. Rptr. 423 (1974).

Under the circumstances we find the issuance of the title certificate to a repossessor involves no deprivation of due process as contemplated by the Fourteenth Amendment or our state constitution. It may be that repossession of automobiles or any other property sold on time payment with an express agreement permitting such repossession without notice may be resulting in great abuses, and controls are needed. If so, the regulation of this abuse is a matter for the legislature, not the courts. We have today pointed out in *John Deere v. Catalano, supra,* the distinction between the matter involved here and in *Fuentes v. Shevin,* 407 U.S. 67,

92 S.Ct. 1983, 32 L.Ed.2d 556 and also the areas to which *Fuentes* has been limited.

## II.

Secondly, the plaintiff challenges the constitutionality of C.R.S. 1963, 13-3-15(3) in that it provides for automatic termination of her current registration upon repossession. She contends that by allowing revocation of registration without first determining whether the repossession was proper, the statute operates over-inclusively because in some cases the repossession may be wrongful. In those cases the state has no interest in revoking the registration. To remedy this possibility, she contends, a hearing must be afforded before any registration is revoked.

The plaintiff misapprehends the nature of automobile registration. The registration of vehicles is primarily a taxing scheme whereby the owner of a vehicle is assessed an annual fee in lieu of an ad valorem tax on his vehicle. 1969 Perm. Supp., C.R.S. 1963, 13-3-32. It applies, with some exceptions, to all vehicles which are owned by Colorado residents and are primarily designed to be operated on Colorado highways. C.R.S. 1963, 13-3-1 and 2. If the vehicle is not to be operated on Colorado highways, the owner is not required to pay the ownership tax. C.R.S. 1963, 13-3-8.

To implement this scheme, C.R.S. 1963, 13-3-15(1) provides for a pro rata credit of the registration tax when an owner of a registered vehicle transfers his interest in the vehicle. This transfer can be by operation of law. C.R.S. 1963, 13-3-15(3) provides in part:

"In the event of a transfer by operation of law of the title or interest of an owner in and to a vehicle, as upon ... repossession upon default in performing the terms of a lease or executory sales contract, chattel mortgage or otherwise, the registration thereof shall expire, and the vehicle shall not be operated upon the highway until and unless the person entitled thereto, shall apply for and obtain the registration thereof . . . ."

Contrary to plaintiff's assertion that this scheme is "oppressive", we find it is equitably tailored to tax those

who have an opportunity to operate a vehicle on Colorado highways. When plaintiff's car was repossessed, she was no longer able to operate her car on the highways. She then became entitled to a tax credit for the remainder of the year. If she has the car returned to her or purchases another one, with proper application and payment of a pro rata tax, she can obtain a new registration. The law is designed to be equitable. Certainly plaintiff is not deprived of any property right by its enforcement.

The judgment is affirmed.

MR. JUSTICE DAY and MR. JUSTICE LEE do not participate.