Milton H. SMITH and Lavenia P. Smith, Appellants,

v.

James R. SPRADLING, Director of Revenue, Respondent.

No. 59026.

Supreme Court of Missouri, Division No. 2.

Jan. 12, 1976.

Motion for Rehearing or to Transfer En Banc Denied Feb. 9, 1976.

James L. Muller, Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellants.

Clarence Thomas, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

Appellants filed suit seeking a declaratory judgment that § 301.215, RSMo 1969, V.A.M.S., which provides for issuance of a certificate of "repossessed title" to a secured creditor who has repossessed an automobile, is violative of the Fourteenth Amendment of the United States Constitution and Article 1, Section 10, of the Missouri Constitution in that it deprived them of their property without due process of law. The trial court ruled otherwise and this appeal was perfected.

Factually, the record reflects that appellants on December 28, 1972, purchased an automobile from a dealer on a deferred payment basis and executed a promissory installment note and security agreement specifically authorizing the seller to repossess upon default of payments. A certificate of title was applied for and issued to appellants, and it reflected the lien of United Missouri Bank South, assignee of the security agreement and note. Following an alleged default by appellants, the bank repossessed the automobile by self-help without recourse to judicial process. On February 28, 1974, the bank made application for a certificate of repossessed title pursuant to § 301.215. In compliance with said section, respondent on March 5, 1974, notified appellants of the application and that such certificate would not be issued prior to March 14, 1974. They were also sent copies of the "application" and "affidavit" of repossession. Appellants notified the Department of Revenue of their objection, and then

filed suit against the bank and James R. Spradling, in his official capacity as Director of Revenue, asking that § 301.215 be declared unconstitutional, an injunction be issued against issuance of the certificate, replevin of the automobile and damages against the bank.

On February 25, 1975, the trial court denied the bank's motion to dismiss the petition; declared that § 301.215 did not contravene either constitution and sustained the motion of respondent to dismiss as to the Department of Revenue; and designated the latter as a separate judgment for purposes of appeal.

Therefore, the only issue before the court is the constitutionality of § 301.215, which provides, in part:

1.  When the holder of any indebtedness secured by a security agreement or other contract for security covering a motor vehicle or trailer repossesses the motor vehicle or trailer either by legal process or in accordance with the terms of a contract authorizing the repossession of the vehicle without legal process, the holder may obtain a certificate of ownership from the director of revenue upon presentation of (1) an application which shall be upon a blank form furnished by the director of revenue and shall contain a full description of the motor vehicle or trailer and the manufacturer's or other identifying number; (2) an affidavit of the holder that the debtor defaulted in payment of the debt, and that the holder repossessed the motor vehicle or trailer either by legal process or in accordance with the terms of the contract, and the specific address where the vehicle or trailer is held; and (3) the original or a conformed or photostatic copy of the original of the security agreement or other contract for security and the instrument evidencing the indebtedness secured by the security agreement or other contract for security. The director may by regulation prescribe for the inclusion in either or both the application or affidavit any other information that he from time to time deems necessary or advisable and may prescribe that the affidavit be part of the application.

2.  Upon the holder's presentation of the papers and payment of a fee of one dollar, the director of revenue, if he is satisfied with the genuineness of the papers, shall issue and deliver to the holder a certificate of ownership which shall be in its usual form except it shall be clearly captioned 'Repossessed Title'; provided, however, that unless the application is accompanied by the written consent, acknowledged before an officer authorized to take acknowledgments, of the owners and other lienholders, if any, of the motor vehicle or trailer as shown by the last prior certificate of ownership, if any, issued on the motor vehicle or trailer, for the issuance of a repossessed title to the applicant, no such repossessed title may be issued by the director of revenue unless the director shall first give ten days' written notice by first class United States mail postage prepaid to each of the owners and other lienholders, if any, of the motor vehicle or trailer at each of their last mailing addresses as shown by the last prior certificate of ownership, if any, issued on the motor vehicle or trailer, that an application for a repossessed title has been made and the date the repossessed title will be issued, and the notice shall be accompanied by a copy, photostatic or otherwise, of each the application and affidavit. The application for repossessed title may be withdrawn by the applicant at any time before the granting thereof. Each repossessed title so issued shall for all purposes be treated as an original certificate of ownership and shall supersede the outstanding certificate of ownership, if any, and duplicates thereof, if any,

on the motor vehicle or trailer, all of which shall become null and void.

The question posed is whether or not the issuance of a "repossessed title" by the Director of Revenue, pursuant to the statutory provisions quoted, constitutes "state action" and, if so, does it violate the "due process" clauses of the United States and Missouri Constitutions.

Appellants contend that "state action" is involved within the purview of the Fourteenth Amendment; that the issuance of the title deprives the debtor of substantial property and ownership rights in the automobile because *that title* is required before the automobile may be sold—the right to sell being an important incident of ownership; and, that § 301.215 does not afford adequate notice and an opportunity for a prior hearing.

Respondent contends that all of the appellants' property interests were lost when the bank, pursuant to private contract, physically repossessed the automobile; that self-help repossession does not require the aid, assistance or interaction of any state agent, body, organization or function; that issuance of the certificate of title is merely a ministerial function recording what has already been accomplished by the parties—and, thus, "state action" is not involved and due process standards are not relevant.

This court had occasion recently to consider at length what, in fact, falls within the scope of "significant state action" in *Federal National Mortgage Ass'n v. Howlett,* 521 S.W.2d 428 (Mo. banc 1975) and *Minnesota Mutual Life Insurance Company v. Fuhrman,* 521 S.W.2d 440 (Mo. banc 1975).[1] The conclusions reached are clearly articulated therein; and, although statutory provisions relating to the foreclosure of mortgages and deeds of trust under powers of sale were involved, that consideration given to the significance of statutory guid-

ance for private activities is relevant to the instant case. We quote a small part of the opinion in the *Howlett* case, to-wit:

> The threshold question we must determine is whether the foreclosure of the deed of trust on appellant's property involved significant state action. This is so because the due process clause of the fourteenth amendment establishes a limitation on the states, not on individuals. Hence, whether the amendment is applicable in a given situation depends on whether sufficient state action is involved. (l.c. 431)

\*　　\*　　\*　　\*　　\*　　\*

Citing and relying on the foregoing statutes, appellant contends in her brief that state action was present in the foreclosure of the deed of trust on her property because "the trustee's power to sell the property and to execute a valid trustee's deed is made legally possible only by the authority with which the state has clothed him under the foreclosure statute."

The fact is that the power of sale exercised by the trustee was not derived from the statute nor granted by the state. It is a contractual right established by the power of sale provision in the deed of trust. That instrument, a contract executed by the parties, specifically provided for extra-judicial foreclosure. The contractual nature of such power of sale has been recognized repeatedly in decisions in this state. *Abrams v. Lakewood Park Cemetery Ass'n,* 355 Mo. 313, 196 S.W.2d 278 (1946); *Adams v. Boyd,* 332 Mo. 484, 58 S.W.2d 704 (1933); *Kelsay v. Farmers' & Traders' Bank,* 166 Mo. 157, 65 S.W. 1007 (1901); *Spires v. Lawless,* 493 S.W.2d 65 (Mo.App.1973). See also *Logan v. Short,* 342 F.Supp. 1349 (E.D.Mo. 1972). (l.c. 432)

\*　　\*　　\*　　\*　　\*　　\*

1. Consideration was given most every case cited in the instant matter in the *Howlett* and *Fuhrman* cases, perhaps because the

attorneys for the debtors are the same in each.

We hold that the foreclosure of the deed of trust on appellant's property was pursuant to the contractual provisions in the deed of trust and not by authority of state law. It follows that appellant's contention that state action was present on the theory that the power of sale exercised by the trustee was conferred by state statute is overruled. (l.c. 433)

\* \* \* \* \* \*

The authors conclude[2] . . . that a state statute which authorizes and thereby encourages private conduct does not automatically render that conduct state action under the fourteenth amendment. Using California statutory law as examples, the article points out that state law has an impact upon almost every form of private conduct. The same would be true with respect to Missouri. For example, statutes cover the execution of a will, the execution of contracts, the formation of corporations, the formation of partnerships, the transfer of real and personal property, and many other areas of private conduct. In the sense that the statutes authorize and regulate private conduct, it may be said that they encourage such conduct. Yet the authors conclude that the mere fact that said statutes authorize private conduct does not convert the acts of those individuals into state action. (l.c. 436)

\* \* \* \* \* \*

Whenever a contract of any kind is breached, a method of enforcement available to the injured party is by action in the courts. If the fact that one of the parties to the contract has the right to resort to the courts to enforce his rights thereunder means that what the parties did to create those rights becomes state action, it is obvious that almost every kind of individual endeavor would be subject to constitutional review under the fourteenth amendment. (l.c. 437)

Directly in point is *Nichols v. Tower Grove Bank*, 362 F.Supp. 374 (E.D.Mo.1973), aff'd 497 F.2d 404 (8th Cir. 1974), wherein a debtor also had argued that issuance by the Director of Revenue of a repossessed title, enabling the repossessed automobile to be sold, had the effect of causing the repossession and sale to be "under color of state law." The court rejected the argument and held that "the nature and extent of the foregoing state involvement in connection with the later sale of the automobile is not . . . such as to require a finding of the requisite state action." 362 F.Supp. at 378. A similar argument was rejected without discussion in *Adams v. Southern California First National Bank*, 492 F.2d 324 (9th Cir. 1973). It was also rejected in *Shirley v. State Nat'l Bank*, 493 F.2d 739, 743 n. 5 (2d Cir. 1974).

The article heretofore noted (47 So.Cal.L. Rev. 1), at p. 19, specifically considers "Motor vehicle transfer-of-title statutes" and the following excerpts are found therein:

With most types of personal property, the evidence of ownership of that property can take a variety of forms, including invoices, bills of sale, oral and written transfer agreements and even physical possession of the property. However, because of the increasing number of vehicles, their great mobility in both interstate and intrastate commerce, their substantial potential for injury, their potential for loss through theft, and their value as a source of revenue through the imposition of licensing and registration fees, a centralized system of recording ownership of vehicles has become essential.

\* \* \* \* \* \*

The activity of the Department of Motor Vehicles in changing its records of registration and ownership . . . is strictly limited to giving evidentiary effect to what previously has been accomplished by purely private action. The Depart-

---

2. Reference to Burke & Reber, State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment, 46 So.Cal.L.Rev. 1003 (1973), and 47 So.Cal.L. Rev. 1 (1973).

ment is not in any way involved in the steps leading to the transfer itself.

Appellants seek to distinguish the authorities noted by submitting that they involved debtors actually in default whereas appellants contend they were not at time of repossession. In view of the appeal being from a dismissal of the petition, as to respondent, allegations therein are taken as true and we have done so in considering the basic issue.[3] In any event, we do not believe the distinction is valid.

When a debtor by contract gives a creditor the right to repossess an encumbered automobile, it would be unreasonable to hold that the power given did not encompass the right to do all things necessary to effectuate the repossession, including the right to apply for and obtain such title as might be required for a subsequent sale. Appellants' argument is predicated on the false premise that the security agreement by implication or otherwise calls for the state to challenge the creditor's decision to repossess. The statutory provisions would indicate otherwise. Upon receipt of a facially proper application for title, the debtor is notified so that, in the event he is unaware of the repossession, he can assert against the creditor all rights that he has remaining under the private agreement. The state is not, and never was, a party to the same. From a practical standpoint, the appellants in this case lose nothing by the absence of respondent as a party. If their claim is valid, they can ask the trial court to enjoin any sale by the bank which would protect any property right they might establish.

Finding no significant participation by the state in the private contractual agreement of the parties which reasonably could be found to fall within the accepted legal definition of "state action," constitu-

tional "due process" is not involved, and thus could not be offended.

The judgment is affirmed.

All of the Judges concur.

---

3. We are somewhat at a loss, however, as to exactly what the petition declares. For instance, in par. 8 it is pleaded that (on Feb. 26) "defendant Bank without any prior notice to plaintiffs *who were not then in default,* wrongfully repossessed said automobile" and par. 9 states that (on Feb. 27) "plaintiffs offered to pay the defendant Bank the expenses incurred in repossessing the automobile and *to bring the payments under the security agreement up to date.*" (Emphasis added.)